PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CARROLL and REBEKA RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY, an Ohio corporation d/b/a FOLGERSCOFFEE.COM; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.  3:22-cv-8952-WHA<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE VIDEO PROTECTION PRIVACY ACT**<br><br>Filed: December 19, 2022<br>Trial Date: None Set |

## I.   INTRODUCTION

Whenever someone watches a video on https://www.folgerscoffee.com/ (the "Website"), Defendants secretly report all the details to Facebook: the visitor's personally identifiable information ("PII"), the titles watched, and more. Why? Data harvesting and targeted advertising.

As shown below, Defendants' actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). As such, Defendants are liable to each class member for $2,500 and related relief.

## II.   JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the VPPA, a federal law.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and events giving rise to the class claims occurred in this District. Upon information and belief, many Class members reside in this District.

3. Defendants are subject to personal jurisdiction because they have sufficient minimum contacts with California and do business with California residents.

## III.   PARTIES

4. Plaintiff Keith Carroll ("Plaintiff Carroll") is a consumer advocate who played the video, "How to Make Coffee with a Single Serve Coffee Maker", in or around December 2022 on the https://www.folgerscoffee.com/coffee/how-to-use-k-cups portion of Defendants' Website. Plaintiff Carroll resides in Virginia.

5. Plaintiff Rebeka Rodriguez ("Plaintiff Rodriguez") (collectively with Plaintiff Carroll, "Plaintiffs") is a consumer advocate who played the video, "Allow Us to Reintroduce Ourselves", in or around March 2023 on the https://www.folgerscoffee.com/folgers-the-coffee-company portion of Defendants' Website. Plaintiff Rodriguez resides in California.

6. Defendant The J.M. Smucker Company d/b/a Folgerscoffee.com is an Ohio corporation with its principal place of business is in Orville, Ohio. Defendant owns,

operates, and/or controls the Website and offers multiple videos for consumers to view and play through the Website. Defendant's Folgers coffee brand, for which the Website is maintained, is widely available throughout the United States, is in thousands of stores in California and this District, and is an immediately recognizable American brand.

7.  The above-named Defendant, along with their affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

8.  Plaintiffs are informed and believe that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

### A. THE FACEBOOK TRACKING PIXEL

9.  Facebook is a social networking company where users are required to identify themselves by "the name they go by in everyday life."[1] To create a Facebook account, a user must provide first name, last name, date of birth and gender.[2]

10. Facebook generates revenue by selling advertising space on its website based upon its ability to identify user interests.[3] Facebook can identify user interests by

---

[1] FACEBOOK, COMMUNITY STANDARDS, PART IV INTEGRITY AND AUTHENTICITY, https://www.facebook.com/communitystandards/integrity_authenticity (last visited December 15, 2022).
[2] FACEBOOK, SIGN UP, https://www.facebook.com/ (last visited December 15, 2022).
[3] FACEBOOK, WHY ADVERTISE ON FACEBOOK, https://www.facebook.com/business/help/20502906038706 (last visited December 15, 2022).

monitoring "offsite" user activity, which allows Facebook to judge user interests beyond what users freely disclose.[4]

11. Facebook enables advertisers to identify "people who have already shown interest in [their] business", which Facebook calls "Custom Audiences."[5] The Custom Audiences tool requires advertisers to supply user data to Facebook, and most do so via the Facebook Tracking Pixel.[6]

12. The Facebook Tracking Pixel is a device included programming code that advertisers can integrate into their website. Once activated, the Facebook Tracking Pixel "tracks the people and type of actions they take."[7] When the Facebook Tracking Pixel captures an action, it sends a record to Facebook, which Facebook then assimilates into the Custom Audiences dataset.

13. Advertisers control what actions—or, as Facebook calls it, "events"— the Facebook Tracking Pixel will collect, including the website's metadata, along with what pages a visitor views.[8]

14. Advertisers control how the Facebook Tracking Pixel identifies visitors. The Facebook Tracking Pixel is configured to automatically collect "HTTP Headers" and "Pixel-specific Data."[9] HTTP Headers collect "IP addresses, information about the web

---

[4] FACEBOOK, AD TARGETING: HELP YOUR ADS FIND THE PEOPLE WHO WILL LOVE YOUR BUSINESS, https://www.facebook.com/business/ads/ad-targeting (last visited December 15, 2022).
[5] FACEBOOK, ABOUT EVENTS CUSTOM AUDIENCE, https://www.facebook.com/business/help/366151833804507?id=300360584271273 (last visited December 15, 2022).
[6] FACEBOOK, CREATE A CUSTOMER LIST CUSTOM AUDIENCE, https://www.facebook.com/business/help/170456843145568?id=2469097533764 94 (last visited December 15, 2022); FACEBOOK, CREATE A WEBSITE CUSTOM AUDIENCE, https://www.facebook.com/business/help/1474662202748341?id=2469097953376494 (last visited December 15, 2022).
[7] FACEBOOK, RETARGETING, https://www.facebook.com/business/oals/reta getting.
[8] See FACEBOOK, FACEBOOK PIXEL, ACCURATE EVENT TRACKING, ADVANCED, https://developers.facebook.com/docs/facebook-pixel/advanced/; see also FACEBOOK, BEST PRACTICES FOR FACEBOOK PIXEL SETUP, https://www.facebook.com/business/help/218844828315224?id=1205376682832142 (last visited December 15, 2022).
[9] FACEBOOK, FACEBOOK PIXEL, https://developers.facebook.com/docs/facebook-pixel/ (last visited December 15, 2022).

browser, page location, document, referrer and persons using the website."[10] Pixel-specific Data includes "the Pixel ID and cookie."[11]

### B. FOLGERSCOFFEE.COM AND THE FACEBOOK PIXEL

15. The VPPA defines PII to "include[]" "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). This means "information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 290 (3d Cir. 2016)).

16. Here, Defendants disclose information which allows Facebook (and any ordinary person) to identify a user's video-watching behavior.

17. Part of Defendants' business involves persuading potential customers to try Folgers products via the use of videos showing consumers enjoying the products and learning how to use the array of their products via "how to" videos on the Website. As such, Defendants are "video tape service providers" under the VPPA because, as part of their business, they deliver "prerecorded video" content or other "similar audio visual materials." 18 U.S.C. § 2710(a)(4). Federal courts have interpreted the term, "video tape service provider" to include commercial website owners/operators like Defendants. *See, e.g.*, *Czarnionka v. The Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022); *Lebakken v. WebMD, LLC*, 2022 WL 16716151, at *1, *3 & n.2 (N.D. Ga. Nov. 4, 2022); *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022); *Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at *4 (D.R.I. Sep't 12, 2022); *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 798-99 (N.D. Cal. 2019); *Cappello v. Walmart Inc.*, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019); *Yershov v. Gannett Satellite Info Network, Inc.*, 820 F.2d 482, 485 n.2 (1st Cir. 2016); *In re Hulu Privacy Litig.*, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012).

---
[10] *Id.*
[11] *Id.*

18. The Website, folgerscoffee.com, hosts and delivers content including videos.

**Figure 1**



19. Defendants knowingly permits Folgerscoffee.com to host the Facebook tracking Pixel which transmits numerous distinct events to Facebook.[12]

**Figure 2**



---

[12] This data is derived from a tool created and offered by Facebook.

20. Defendants have configured the PageView event to transmit the URL and the category of content selected to Facebook.

**Figure 3**



21. In the above figure, for example, Defendants disclose a webpage's Universal Resource Locator ("URL") to Facebook.

22. Microdata discloses the video's title and other descriptors.

**Figure 4**



23. The aggregate pixel events (Page View and Microdata Automatically Detected,) permit an ordinary person to identify a video's content, title, and location.

24. When a visitor watches a video on Folgerscoffee.com while logged into Facebook, Defendants knowingly compels a visitor's browser to transmit the c user cookie to Facebook. The c user cookie contains that visitor's unencrypted Facebook ID. When accessing the above video, for example, Defendants compelled the browser to send nine cookies:

**Figure 5**

| Name | Value | Domain |
|---|---|---|
| fr | 0iLmxmGApZkrtQX6F.AWUbbW… | .facebook.com |
| xs | 12%3AanrZLfbCRbwDAA%3A2… | .facebook.com |
| c_user | 100087271304389 | .facebook.com |
| wd | 1292x722 | .facebook.com |
| sb | Z7VeY5082dzpP0ecvF3j2thu | .facebook.com |
| dpr | 2 | .facebook.com |
| presence | C%7B%22t3%22%3A%5B%5D… | .facebook.com |
| datr | ErdeY8DwZw6OUY5T3qHVChfr | .facebook.com |
| locale | en_US | .facebook.com |

25. When a visitor's browser has recently logged out of Facebook, Defendants will compel the browser to send a smaller set of cookies:

**Figure 6**

| Name | Value | Domain |
|---|---|---|
| fr | 0iLmxmGApZkrtQX6F.AWUjHngZ… | .facebook.com |
| wd | 1292x722 | .facebook.com |
| dpr | 2 | .facebook.com |
| sb | Z7VeY5082dzpP0ecvF3j2thu | .facebook.com |
| datr | ErdeY8DwZw6OUY5T3qHVChfr | .facebook.com |
| locale | en_US | .facebook.com |

26. The fr cookie contains an encrypted Facebook ID and browser identifier.[13] The datr cookies also identifies a browser.[14] Facebook, at a minimum, uses the fr cookie to identify particular users.[15]

27. The _fbp cookie contains, at least, an unencrypted value that uniquely identifies a browser.[16] As with the fr cookie, Facebook uses the _fbp cookie to identify users.

---

[13] DATA PROTECTION COMMISSIONER, FACEBOOK IRELAND LTD, REPORT OF RE-AUDIT (Sept. 21, 2012), http://www.europe-v facebook.org/ODPC_Review.pdf (last visited December 15, 2022).
[14] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited December 15, 2022).
[15] FACEBOOK, COOKIES & OTHER STORAGE TECHNOLOGIES, https://www.facebook.com/policy/cookies/ (last visited December 15, 2022).
[16] FACEBOOK, CONVERSION API, https://developers.facebook.com/docs/marketingapi/conversions-api/parameters/fbp-and-fbc/ (last visited December 15, 2022).

FIRST AMENDED CLASS ACTION COMPLAINT

**Figure 7**

| Name | Value | Domain |
|---|---|---|
| _fbp | fb.1.1671208560917.1685904065 | .folgerscoffee.com |

28. The Facebook Tracking Pixel uses both first- and third-party cookies. A first-party cookie is "created by the website the user is visiting"—i.e., Folgerscoffee.com.[17] A third-party cookie is "created by a website with a domain name other than the one the user is currently visiting"—i.e., Facebook.[18] The _fbp cookie is always transmitted as a first-party cookie. A duplicate _fbp cookie is sometimes sent as a third-party cookie, depending on whether the browser has recently logged into Facebook.

29. Facebook, at a minimum, uses the fr, _fbp, and c_user cookies to link to Facebook IDs and corresponding Facebook profiles.

30. A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile—and all personal information publicly listed on that profile—by appending the Facebook ID to the end of Facebook.com.

31. Through the Facebook Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Facebook to know, among other things, what Folgerscoffee.com videos a user has watched.[19]

32. By compelling a visitor's browser to disclose the c_user cookie alongside event data for videos, Defendants knowingly disclose information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

---

[17] PC MAG, FIRST-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/first-party-cookie (last visited December 15, 2022). This is confirmable by using developer tools to inspect a website's cookies and track network activity.
[18] PC MAG, THIRD-PARTY COOKIES, https://www.pcmag.com/encyclopedia/term/third-party-cookie (last visited December 15, 2022). This is also confirmable by tracking network activity.
[19] FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started (last visited December 15, 2022).

33. By compelling a visitor's browser to disclose the fr and _fbp cookies alongside event data for videos, Defendants knowingly disclose information sufficient to permit an ordinary person to identify a specific individual's video viewing behavior.

34. By compelling a visitor's browser to disclose the fr cookie and other browser identifiers alongside event data for videos, Defendants knowingly disclose information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior.

35. Facebook confirms that it matches activity on Folgerscoffee.com with a user's profile. Facebook allows users to download their "off-site activity," which is a "summary of activity that businesses and organizations share with us about your interactions, such as visiting their apps or websites."[20] The off-site activity report confirms Defendants identify an individual's video viewing activities.

## C.   EXPERIENCE OF PLAINTIFFS

36. Plaintiffs, like most Americans, have purchased, drank, and enjoyed Folgers coffee and Defendants' related products. As such, Plaintiffs are both "purchasers" and "consumers" under the VPPA.

37. Further, Plaintiffs are consumer privacy advocates with dual motivations for playing videos on Defendants' Website. First, Plaintiffs are genuinely interested in learning more about the goods and services offered by Defendants, and each purchased Defendants' products multiple times in the past. Plaintiff Carroll played the "How to Make Coffee with a Single Serve Coffee Maker" video, in or around December 2022 on the https://www.folgerscoffee.com/coffee/how-to/use-k-cups portion of Defendants' Website. Plaintiff Rodriguez played the video, "Allow Us to Reintroduce Ourselves", in or around March 2023 on the https://www.folgerscoffee.com/folgers-the-coffee-company portion of Defendants' Website. Second, Plaintiffs are "testers" who work to

---

[20] *See* https://www.facebook.com/help/2207256696182627 (Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device.") (last visited December 15, 2022).

- 11 -
FIRST AMENDED CLASS ACTION COMPLAINT

ensure that companies abide by the privacy obligations imposed by federal law. As consumers who advance important public interests at the risk of vile personal attacks, Plaintiffs should be "praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006).

38. In enacting the VPAA, Congress intentionally chose to extend its protections to all persons who watch videos, not simply those who purchase them or claim pecuniary loss. As such, statutes like the VPPA are largely enforced by civic-minded "testers" such as Plaintiffs. *See Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109 (9th Cir. 2014) (explaining why testers have Article III standing and generally discussing value and importance of testers in enforcement of consumer protection and civil rights statutes).

39. When Plaintiffs played the videos on the Website, Defendants knowingly disclosed event data, which recorded and disclosed the videos' title, description, and URL. Alongside this event data, Defendants also disclosed identifiers and PII for Plaintiffs, including the c_user and fr cookies. In other words, Defendants did exactly what the VPPA prohibits: they disclosed Plaintiffs' video viewing habits to a third party.

40. Given the nature of Defendants' business, visitors would be shocked and appalled to know that Defendants secretly disclose to Facebook all of key data regarding a visitors' viewing habits.

41. Defendants' conduct is illegal, offensive, and contrary to visitor expectations.

42. By disclosing his event data and identifiers, Defendants disclosed Plaintiffs' PII to a third-party.

## CLASS ALLEGATIONS

43. Plaintiffs bring this action individually and on behalf of all others similarly situated (the "Class") defined as follows:

> **All persons in the United States who played video content on Folgerscoffee.com and whose PII was disclosed by Defendants to**

**Facebook during the two years preceding the filing of this action (the "Class Period").**

44. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** At this time, Plaintiffs do not know the exact number of members of the aforementioned Class. However, given the popularity of Defendants' website and the prevalence of Defendants' products throughout the United States, the number of persons within the Class is believed to be so numerous that joinder of all members is impractical.

45. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

   a) whether Plaintiffs and the Class are within the definition of the term, "consumer," used in the VPPA;

   b) whether Defendants collected Plaintiffs' and the Class's PII;

   c) whether Defendants unlawfully disclosed and continue to disclose their users' PII in violation of the VPPA;

   d) whether Defendants' disclosures were committed knowingly; and

   e) whether Defendants disclosed Plaintiffs' and the Class's PII without consent.

46. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of those of the Class because Plaintiffs, like all members of the Class, used Folgerscoffee.com to play videos, and had PII collected and disclosed by Defendants.

47. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Class.

48. **Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Even if every member of the Class could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## CAUSE OF ACTION

## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

## 18 U.S.C. § 2710, *et seq.*

49. Defendants are "video tape service providers" that create, host, and deliver videos on the Website, thereby "engag[ing] in the business, in or affecting interstate or foreign commerce, of rental, sale, *or delivery of prerecorded video* cassette tapes or similar *audio visual materials*." 18 U.S.C. § 2710(a)(4) (emphasis added). Defendants also use the videos to collect and disclose viewers' PII so it can later retarget them for advertisements.

50. Plaintiffs and members of the Class are "consumers" because they have purchased Defendants' products multiple times in the past, are "renter[s], purchaser[s], or subscriber[s] of *goods or services*" of Defendants and have watched videos on the Website. 18 U.S.C. § 2710(a)(1) (emphasis added).

51. Defendants disclosed to a third party, Facebook, Plaintiffs' and the Class members' personally identifiable information. Defendants utilized the Facebook

Tracking Pixel to compel Plaintiffs' web browser to transfer Plaintiffs' identifying information, like their Facebook IDs, along with Plaintiffs' event data, like the title of the videos viewed.

52. Plaintiffs and the Class members played videos offered by Defendants on the Website.

53. Defendants knowingly disclosed Plaintiffs' and Class members' PII because they used that data to build audiences on Facebook and retarget them for its advertising campaigns.

54. Plaintiffs and Class members did not provide Defendants with any form of consent—either written or otherwise—to disclose their PII to third parties.

55. Defendant's disclosures were not made in the "ordinary course of business" as the term is defined by the VPPA because they were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment against Defendants, individually and on behalf of all others similarly situated, as follows:

    a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Class;

    b.    For an order declaring that Defendants' conduct violates the VPPA;

    c.    For an order finding in favor of Plaintiffs and the Class on the cause of action asserted herein, including all available damages;

    d.    For prejudgment interest on all amounts awarded;

    e.    For injunctive relief to stop the illegal conduct;

///

///

///

///

  f. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses and costs of suit;

  g. For any and all other relief, at law or equity, that may be appropriate.

Dated:  March 17, 2023    PACIFIC TRIAL ATTORNEYS, APC

            By: _____
            Scott. J. Ferrell
            Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2023, I electronically filed the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

                                       */s/Scott J. Ferrell*
                                         Scott J. Ferrell