Terence N. Hawley (SBN 179106)
Email: thawley@reedsmith.com
Quynh La (SBN 341162)
Email: qla@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Phone: (415) 543-8700
Fax: (415) 391-8269

Benjamin Watson (SBN 306379)
Email: bwatson@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Phone: 213-457-8000
Fax: 213-457-8080

Attorneys for Defendant
THE J.M. SMUCKER COMPANY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CARROLL and REBEKA RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY, an Ohio corporation d/b/a FOLGERSCOFFEE.COM; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 3:22-cv-08952-WHA<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       May 25, 2023<br>Time:      8:00 AM<br>Courtroom: San Francisco Courthouse<br>           Courtroom 12 – 19th Floor<br><br>*[Filed Concurrently with Request for Judicial Notice and Proposed Order]*<br><br>Judge William Alsup |

TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on May 25, 2023 at 8:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 12, 19th Floor, of the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable William Alsup, Defendant The J.M. Smucker Company ("Smucker"), by and through counsel, will and hereby does move, pursuant to Rules 8(a)(1), 8(a)(2), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing this action with prejudice for lack of personal jurisdiction and failure to state a claim. Smucker bases this Motion on the grounds discussed in the Memorandum of Points and Authorities in support of this Motion, the accompanying Request for Judicial Notice and the exhibits attached thereto, the complete files in this action, the arguments of counsel, and other further matters as this Court may consider.

WHEREFORE, Smucker respectfully requests that the Court issue an order GRANTING this Motion with prejudice and awarding Smucker such other and further relief as the Court deems just.

DATED:  March 31, 2023                    Reed Smith LLP


By: /s/ Terence N. Hawley
Terence N. Hawley
Benjamin Watson
Quynh La

Attorneys for Defendant
THE J.M. SMUCKER COMPANY

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
CASE NO. 3:22-CV-08952-WHA

# **TABLE OF CONTENTS**

**Page**

I.     SUMMARY OF ARGUMENT ................................................................................. 1

II.    SUMMARY OF FACTUAL ALLEGATIONS ...................................................... 2

III.   LEGAL STANDARDS ......................................................................................... 4

IV.    ARGUMENT ......................................................................................................... 4

A.     The Court Lacks Personal Jurisdiction Over Smucker Because The Jurisdictional Facts Proffered Fall Far Short Of Due Process Requirements ............ 4

B.     Plaintiffs Have Failed To Allege Sufficient Facts To Support A VPPA Violation ........................................................................................................... 9

1.     Plaintiffs Have Not Plausibly Alleged That Smucker Is A Video Tape Service Provider ........................................................................ 9

2.     Plaintiffs Have Not Plausibly Alleged That They Are Consumers Of Goods Or Services From A Video Tape Service Provider .......................... 12

3.     Plaintiffs Have Not Plausibly Alleged That Smucker Disclosed "Specific Video Materials" that Plaintiffs "Requested or Obtained" ........... 14

4.     Plaintiffs Have Not Plausibly Alleged That Smucker Knowingly Disclosed Plaintiffs' Personally Identifiable Information ............................ 16

V.     CONCLUSION ..................................................................................................... 18

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambrose v. Bos. Globe Media Partners LLC,*
   No. 21-10810-RGS, 2022 U.S. Dist. LEXIS 168403 (D. Mass. Sep. 19, 2022) ....................11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)....................................................................................................................4

*Austin-Spearman v. AMC Network Entm't LLC,*
   98 F.Supp.3d 662 (S.D.N.Y. Apr. 7, 2015) .............................................................13, 14, 17

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)....................................................................................................................4

*Boschetto v. Hansing,*
   539 F.3d 1011 (9th Cir. 2008) ................................................................................................4, 6

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,*
   137 S. Ct. 1773 (2017)...............................................................................................................9

*Byars v. Hot Topic, Inc.,*
   2023 U.S. Dist. LEXIS 24985 (C.D. Cal. Feb. 14, 2023)....................................................1, 3

*Calder v. Jones,*
   465 U.S. 783 (1984)....................................................................................................................6

*Cantu v. Darden Corp. et al.,*
   No. 2:22cv8489 (C.D. Cal. filed Nov. 20, 2022)......................................................................3

*Cantu v. Tapestry, Inc., et al.,*
   No. 3:22cv1973 (S.D. Cal. filed Dec. 13, 2022).......................................................................3

*Cappello v. Walmart Inc.,*
   No. 18-cv-06678-RS, 2019 U.S. Dist. LEXIS 237326 (N.D. Cal. Apr. 5, 2019)...................11

*Carroll v. Dave & Busters, Inc.,*
   No. 4:22cv9070 (N.D. Cal. filed Dec. 21, 2022)......................................................................3

*Carroll v. La-Z Boy Inc., et al.,*
   No. 4:22cv8961 (N.D. Cal. filed Dec. 19, 2022)......................................................................3

*Carroll v. Newell Brands Inc., et al.,*
   No. 2:23cv105 (C.D. Cal. filed Jan. 8, 2023) ...........................................................................3

*Carroll v. The Procter & Gamble Co., et al.,*
   No. 3:23cv10 (S.D. Cal. Jan. 4, 2023) ......................................................................................3

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Czarnionka v. Epoch Times Ass'n*,
   2022 U.S. Dist. LEXIS 209067 (S.D.N.Y. Nov. 17, 2022) ....................................................11

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...............................................................................................................5

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ..............................................................................................6

*Electro Scan, Inc. v. Henrich*,
   No. 2:18-cv-02689-JAM-EFB, 2019 U.S. Dist. LEXIS 47396 (E.D. Cal. Mar. 20,
   2019) .......................................................................................................................................8

*Ellis v. Cartoon Network*,
   803 F.3d 1251 (11th Cir. 2015) ..........................................................................................13

*In re Facebook, Inc.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ...............................................................................11

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141
   S. Ct. 1684 (2021) ...............................................................................................................17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ..............................................................................................................5

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ..............................................................................................5

*Helicopteros Nacionales de Colombia S.A. v. Hall*,
   466 U.S. 408 (1984) ...........................................................................................................5, 6

*In re Hulu Privacy Litig.*,
   2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014) ...................................................17

*In re Hulu Privacy Litig.*,
   86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...............................................................................14

*In re Hulu Privacy Litig.*,
   No. C 11-03764 LB, 2012 U.S. Dist. LEXIS 112916 (N.D. Cal. Aug. 10, 2012) ...........11, 14

*Hunthausen v. Spine Media, LLC, et al.*,
   No. 3:22cv1970 (S.D. Cal. filed Dec. 13, 2022).................................................................3

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ..............................................................................................................5

*Lebakken v. WEBMD, LLC*,
   No. 1:22-CV-644-TWT, 2022 U.S. Dist. LEXIS 201010 (N.D. Ga. Nov. 4, 2022) ..............11

*Louth v. NFL Enter. LLC*,
No. 1:21-cv-00405-MSM-PAS, 2022 U.S. Dist. LEXIS 163706 (D.R.I. Sep. 12, 2022) .......11

*Martin v. Meredith Corp.*,
2023 U.S. Dist LEXIS 27539 (S.D.N.Y. Feb. 17, 2023) ....................................................15, 16

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) ...........................................................................................4

*Massie v. Gen. Motors Co.*,
No. 1:20-cv-01560-JLT, 2021 U.S. Dist. LEXIS 99945 (E.D. Cal. May 25, 2021) .............8, 9

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) ......................................................................................8

*Mavrix Photo Inc. v. Brand Techs. Inc.*,
647 F.3d 1218 (9th Cir. 2011) ...........................................................................................7

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580-WHO, 2022 U.S. Dist. LEXIS 230754 (N.D. Cal. Dec. 22, 2022).............17

*Mollett v. Netflix, Inc.*,
No. 5:11-CV-01629-EJD, 2012 U.S. Dist. LEXIS 116497 (N.D. Cal. Aug. 17, 2012) .........16

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)................................................................................................1

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ...........................................................................................4

*Perry v. Cable News Network, Inc.*,
854 F.3d 1336 (11th Cir. 2017) .........................................................................................14

*Pruitt v. Comcast Cable Holdings, LLC*,
100 F. App'x 713 (10th Cir. 2004) ....................................................................................18

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)...............................................................................18

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .....................................................................................6, 9, 15

*Self Directed Placement Corp. v. Control Data*,
908 F.2d 462 (9th Cir. 1990) .............................................................................................13

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*,
549 U.S. 422 (2007)...........................................................................................................4

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ...........................................................................................4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*ThermoLife Int'l, Ltd. Liab. Co. v. NetNutri.com Ltd. Liab. Co.*,
   813 F. App'x 316 (9th Cir. 2020) ........................................................................8

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ......................................................10, 11, 13

**Statutes**

18 U.S.C. § 2710 ....................................................................................................... *passim.*

28 U.S.C § 1631 ........................................................................................................9

Cal. Code Civ. Proc. § 410.10 ....................................................................................4

**Rules**

Fed. R. Civ. P. 8(a)(2) ..........................................................................................4, 13

Fed. R. Civ. P. 12(b)(6) ...............................................................................................4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     SUMMARY OF ARGUMENT

Plaintiffs are self-styled "consumer privacy advocates" who claim to work as "testers" to ensure that companies comply with privacy laws.[1]  In reality, Plaintiffs' counsel has filed numerous, nearly identical lawsuits in California courts against different companies on behalf of a small cohort of such "testers" seeking to extend the Video Privacy and Protection Act ("VPPA") to routine web-browsing activity.  In line with other cases, Plaintiffs' complaint alleges in conclusory fashion that they visited a Smucker-controlled website (www.folgerscoffee.com) that hosted or linked to product-related videos, that Plaintiffs watched a video for free, and that a "Facebook Tracking Pixel" on the website caused their web browsers to share with Facebook via cookies the video they viewed and information that could be used to identify them.  *See* Dkt. 16.

Plaintiffs' boilerplate allegations are legally deficient and fall short on multiple levels.  As an initial matter, Plaintiffs fail to provide any basis for this Court to exercise personal jurisdiction over Smucker based on activities directed at California residents.  Ninth Circuit precedent requires Plaintiffs to allege a basis for personal jurisdiction that is "something more" than simply maintaining a website that consumers in California can access—in other words, some sort of action directly targeting California consumers.  Plaintiffs have not alleged that Smucker did any such thing.

Nor have Plaintiffs stated a claim under the VPPA, a statute enacted in 1988 to prohibit disclosure of an individual's video tape rental history, following the publication of Supreme Court nominee Robert Bork's video tape rental information.  Congress intended the VPPA to be "quite narrow" to address the incident involving Judge Bork.  *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284–85 (3d Cir. 2016).  The VPPA thus allows an aggrieved "consumer" to bring a civil action to recover damages and other relief if a "video tape service provider" ever "knowingly" discloses "personally identifiable information" regarding "specific video materials or

---

[1] Plaintiff Carroll went so far as to compare himself to Civil Rights activist Rosa Parks in his original complaint.  Dkt. 1 at n.21.  One jurist recently addressed the attempted analogy in harsh terms:  "Plaintiff's self-aggrandizing comparison trivializes Rosa Parks, a key accelerant of the civil rights movement.  It was not well received by the Court." *See Byars v. Hot Topic, Inc.,* 2023 U.S. Dist. LEXIS 24985 at *5, n.4 (C.D. Cal. Feb. 14, 2023).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

services" the consumer "requested or obtained" from the video tape service provider.  18 U.S.C. § 2710(a)(3)–(4), (b)(1), (c)(2)(A).  Earlier suits under the VPPA focused on extending the statute to providers of video-streaming services (*e.g.*, Hulu, Netflix).  The latest wave of cases, including the present one, attempt to go much further, seeking to leverage the VPPA (and the threat of statutory damages) in a manner that could impose liability on virtually any company with a website that hosts videos and uses nearly ubiquitous cookie technology.

Congress plainly did not intend for or contemplate "tester" suits like the present one.  *First*, Plaintiffs have failed to allege that Smucker, a consumer products company, qualifies as a "video tape service provider" simply because it has product-related video content on a website.  *Second*, Plaintiffs fail to allege that they engaged in any non-itinerant activities that could possibly qualify them as "consumers" under the VPPA.  *Third*, Plaintiffs have not plausibly alleged that Smucker disclosed specific video materials that they requested or obtained, as opposed to information regarding website pages they visited that contained video content.  *Fourth*, Plaintiffs do not sufficiently allege that Smucker knowingly disclosed anything or even possessed their identifying information.  Rather, they acknowledge that their own browser disclosed information to Facebook, and that the information disclosed did not even identify them, much less tie them to any video they viewed.

For all of these reasons, the complaint fails to state a VPPA violation and should be dismissed with prejudice.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

Most of the allegations in Plaintiffs' complaint could apply to almost any company that hosts a video on its website.  It is therefore unsurprising that Plaintiffs' counsel has filed numerous other cases in federal and state courts in California asserting essentially the same allegations with minimal

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    revisions.[2]    Indeed, the filed version of Plaintiffs' complaint bears the file name "Pleading

2    Template."[3]

3           Plaintiffs describe Smucker as an "Ohio corporation" that "owns, operates, and/or controls"

4    a website, www.folgerscoffee.com (the "Folgers Coffee website"), whose business plan "involves

5    persuading potential customers to try Folgers products via the use of videos" hosted on that website.

6    Dkt. 16 at ¶¶ 6, 17.  In Plaintiffs' view, this fact alone makes Smucker a "video tape service provider"

7    for purposes of the VPPA.  *Id.* at ¶¶ 15, 17, 49.  Plaintiffs allege that they visited the Folgers Coffee

8    website with the intent to enforce the VPPA, but also to learn about Folgers products.  *Id.* at ¶¶ 37–

9    38.  While there, they "played the videos on the [Folgers Coffee website]," which Plaintiffs contend

10   makes them a "consumer" under the VPPA.  *Id.* at ¶¶ 39, 50.  Plaintiffs allege that their web browser

11   then disclosed to Facebook, through the Facebook Tracking Pixel, the video's content, title, and

12   location, along with information Facebook can use to identify Plaintiffs (information that is

13   unencrypted if Plaintiffs are logged into to Facebook but encrypted if Plaintiffs are not).  *Id.* at ¶¶ 23–

14   24, 26–27, 33–34, 51.  Plaintiffs do not identify any facts or information indicating that Smucker

15   disclosed that they actually viewed or interacted with the video as opposed to simply visiting a page

16

17   [2] *See, e.g.*, *Carroll v. Newell Brands Inc., et al.*, No. 2:23cv105 (C.D. Cal. filed Jan. 8, 2023); *Carroll v. The Procter & Gamble Co., et al.*, No. 3:23cv10 (S.D. Cal. Jan. 4, 2023); *Carroll v. Dave &*

18   *Busters, Inc.*, No. 4:22cv9070 (N.D. Cal. filed Dec. 21, 2022); *Carroll v. La-Z Boy Inc., et al.*, No. 4:22cv8961 (N.D. Cal. filed Dec. 19, 2022); *Hunthausen v. Spine Media, LLC, et al.*, No. 3:22cv1970

19   (S.D. Cal. filed Dec. 13, 2022); *Cantu v. Tapestry, Inc., et al.*, No. 3:22cv1973 (S.D. Cal. filed Dec.

20   13, 2022); *Cantu v. Darden Corp. et al.*, No. 2:22cv8489 (C.D. Cal. filed Nov. 20, 2022).

21   [3] Plaintiffs' counsel has received strong admonishment from the bench for employing the same litigation tactic in multiple suits under the California Invasion of Privacy Act and the Americans with

22   Disabilities Act.  *See Byars*, 2023 U.S. Dist. LEXIS 24985 at * 11 (C.D. Cal. Feb. 14, 2023).  In dismissing one such complaint, Judge Bernal described Plaintiff's counsel's strategy as follows:

23
      [W]hen the goal is to file as many lawsuits as possible in the least amount of time, it is
24    far easier and cheaper to copy and paste a complaint over and over again, and to write
      the original template in such a way that hardly anything needs to be swapped out.
25    Sometimes a plaintiff can get away with this, particularly if a defendant is willing to
      offer a quick cash settlement . . . . [W]hatever one's views on the propriety of copying
26    and pasting from boilerplate pleadings, there is a point at which all reasonable people
      should agree the practice has gone too far.
27

28   *Id.*

3

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

with video content. Nevertheless, in Plaintiffs' view, these facts constitute "knowing[] disclosure" of their personally identifiable information for VPPA purposes. *Id.* at ¶¶ 32–34. On this basis, Plaintiffs purport to represent themselves and a putative national class. *Id.* at ¶¶ 42–43.

## III.    LEGAL STANDARDS

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over . . . the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) if a plaintiff either fails to state a cognizable legal theory or has not alleged sufficient facts to support a cognizable legal theory. *See id.* at 562–63. A pleading that offers "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Further, the Court need not accept allegations contradicted by materials cited in the complaint or subject to judicial notice. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

## IV.    ARGUMENT

### A.    The Court Lacks Personal Jurisdiction Over Smucker Because The Jurisdictional Facts Proffered Fall Far Short Of Due Process Requirements.

Plaintiffs bear the burden to establish personal jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) ("In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."). When facing a jurisdiction challenge on a motion to dismiss, the plaintiff must make a "prima facie showing of jurisdictional facts" to withstand the motion to dismiss. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014) (citation omitted). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (citation omitted). California authorizes jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Code Civ. P. § 410.10. Thus, Plaintiffs must

4

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  carry their burden to establish that "personal jurisdiction in this case would meet the requirements of

2  due process."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129

3  (9th Cir. 2003).

4        The Fourteenth Amendment's Due Process Clause permits courts to exercise personal

5  jurisdiction over any defendant who has sufficient "minimum contacts" with the forum such that the

6  "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l*

7  *Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted).

8  To exercise personal jurisdiction over a non-resident defendant, the Court must have either (1)

9  "general jurisdiction," which arises where a defendant's activities in the forum state are sufficiently

10  "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over the defendant

11  in all matters; or (2) "specific jurisdiction," which arises when a defendant's contacts with the forum

12  give rise to the claim in question.  *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408,

13  414–16 (1984).  "With respect to a corporation, the place of incorporation and principal place of

14  business are paradigm bases for general jurisdiction."  *Daimler AG v. Bauman*, 571 U.S. 117, 137

15  (2014) (internal quotation marks, citation, and edits omitted).

16        Plaintiffs offer two theories in support of personal jurisdiction:  (1) that Smucker's Folgers

17  Coffee brand "is in thousands of stores in California and this District" and Plaintiffs "purchased,

18  drank, and enjoyed Folgers Coffee" from unspecified sources in unspecified places at unspecified

19  times; and (2) that Smucker "offers multiple videos for consumers to view and play through the

20  [Folgers Coffee website]," and Plaintiffs each played one of those videos.  Dkt. 16 at ¶¶ 6, 36–37.

21  Based on these allegations, Plaintiffs conclude that Smucker, an "Ohio corporation with its principal

22  place of business is [sic] in Orville, Ohio" is "subject to personal jurisdiction because they have

23  sufficient minimum contacts with California and do business with California residents."  *Id.* at ¶ 3, 6.

24        By invoking an Ohio company's "minimum contacts" with California as the basis for

25  jurisdiction, Plaintiffs appear to concede that there is no basis for general jurisdiction.  *See Goodyear*

26  *Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (limiting general jurisdiction over

27  corporations to those forums where the corporation has "continuous and systematic" contacts, such

28  that it is "essentially at home").  Thus, Plaintiffs must satisfy the Ninth Circuit's three-part test to

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

determine whether a defendant corporation's contacts with the forum state are sufficient to establish specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (citation omitted).  "The plaintiff bears the burden of satisfying the first two prongs of the test."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  The starting point, then, is for Plaintiffs to show that Smucker "either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California."  *Id.* at 802.  Where, as here, Plaintiffs' claim sounds in tort rather than contract, analysis of purposeful direction, rather than purposeful availment, is appropriate.  *Id.*  To show purposeful direction, Plaintiffs must plead facts to satisfy the "effects test":  Smucker must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that [Smucker] knows is likely to be suffered in the forum state."  *Id.* at 803 (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Calder v. Jones*, 465 U.S. 783 (1984)).  If Plaintiffs can satisfy this test, Plaintiffs must then tie their claim to that purposefully directed act to establish jurisdiction.  *Id.* at 802.

Preliminarily, to the extent Plaintiffs' first theory of personal jurisdiction attempts to plead a "stream of commerce" approach to jurisdiction by alleging that Smucker made Folgers Coffee available in California and that Plaintiff Rodriguez (a California resident) purchased it, these allegations cannot support specific jurisdiction over a non-resident manufacturer where the product placed into commerce is not the basis of Plaintiffs' claim.  *See Helicopteros*, 466 U.S. at 418 ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions.").  Even if Rodriguez had alleged that she purchased Folgers Coffee in California at a

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

relevant point in time, Plaintiffs' causes of action under the VPPA do not relate to her purchase of Folgers Coffee, but rather to playing videos on the Folgers Coffee website. Accordingly, these allegations cannot support specific jurisdiction.

A charitable reading of Plaintiffs' complaint suggests that Plaintiffs are relying on the ability of a California resident to access the Folgers Coffee website (which "host[s] the Facebook tracking pixel") as the basis for specific personal jurisdiction. Dkt. 16 at ¶¶ 18–19, 21, 29. The Ninth Circuit uses a sliding scale to examine whether providing access to a website constitutes purposeful availment or direction. *See Mavrix Photo Inc. v. Brand Techs. Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011) (citations omitted) (describing the "sliding scale test" where "the availability of jurisdiction is determined by examining the 'level of interactivity and commercial nature of the exchange'" occurring on a website). On one hand, an interactive website through which a defendant "clearly does business over the Internet" and "enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet" supports jurisdiction. *Id.* at 1226. On the other hand, a passive website on which a defendant "has simply posted information" that "is accessible to users in foreign jurisdictions" does not support jurisdiction. *Id.* at 1226–27. The focus is on whether the defendant did "something more" than maintain a website that California consumers can access, which means that a court may consider the interactivity of a website, "the geographic scope of the defendant's commercial ambitions," or "whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id.* at 1229.

There is nothing in Plaintiffs' complaint to suggest that Smucker's operation of a widely accessible brand website constitutes activity targeting California consumers. Indeed, even the above "charitable reading" of Plaintiffs' jurisdictional allegation is *too* charitable. Plaintiffs do not allege that the Facebook Tracking Pixel purportedly hosted at folgerscoffee.com is expressly aimed at California, that Smucker tailored any action or any video hosted on www.folgerscoffee.com to target California residents, or that Smucker somehow derived profits from California residents by way of any such video. Nor do Plaintiffs alleged that they played a video on the Folgers Coffee website or accessed the website while located in California. In short, Plaintiffs have not alleged any intentional conduct designed specifically to target and attract Californians (rather than customers nationwide) to

7

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

the Folgers Coffee website. *See Electro Scan, Inc. v. Henrich*, No. 2:18-cv-02689-JAM-EFB, 2019 U.S. Dist. LEXIS 47396, at *13–14 (E.D. Cal. Mar. 20, 2019) (no personal jurisdiction based on "an internationally accessible website" in the absence of facts suggesting a "file exchange through [the] website or interactive features targeting California customers" or that the website owner "specifically targeted California").

Plaintiffs may be hoping the court will *infer* from their complaint that Smucker's nationwide presence effectively targets every person in the United States, and thereby targets California residents. *See, e.g.* Dkt. 16 at ¶ 6 ("Defendant's Folgers Coffee brand, for which the [Folgers Coffee website] is maintained, is widely available throughout the United States, is in thousands of stores in California and this District, and is an immediately recognizable American brand."). But the Ninth Circuit has expressly rejected this position: Plaintiffs cannot rely on "nonspecific, nationwide" activity to establish specific personal jurisdiction because "any contact with [California] would be 'random, fortuitous, or attenuated.'" *ThermoLife Int'l, Ltd. Liab. Co. v. NetNutri.com Ltd. Liab. Co*., 813 F. App'x 316, 318 (9th Cir. 2020) (affirming dismissal for lack of personal jurisdiction based on a "highly interactive" website and product sales unconnected to Plaintiffs' claims). "If [Smucker] can be haled into California merely on the basis of its universally accessible website, then, under [Plaintiffs'] proposed rule, it can be haled into every state, and respectively, every online advertiser worldwide can be haled into California." *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018).

Particularly on point is the Eastern District of California's recent application of these principles on a motion to dismiss in which it declined to exercise personal jurisdiction over General Motors ("GM") premised upon the use of website software that "records a random selection of website sessions from users nationwide" and collects users' "location at the time of the visit." *Massie v. Gen. Motors Co.*, No. 1:20-cv-01560-JLT, 2021 U.S. Dist. LEXIS 99945, *12–13 (E.D. Cal. May 25, 2021). In holding that this conduct does not "constitute the type of minimum contacts with the forum needed for specific personal jurisdiction," the court observed that GM did not "target California or distinguish California from any other state where GM's website is accessible," and that "mere foreseeability that someone may be harmed in the forum state does not suffice to confer

8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

specific personal jurisdiction." *Id.* at *12–13, 19.  The court discounted the materiality to specific personal jurisdiction of the fact that GM "is marketing to Californians" and observed that there was "no evidence of file exchange through GM's website or interactive features targeting California customers." *Id.* at *11, 16.  "Without facts showing GM specifically targeted California, the operation of an internationally accessible website is insufficient to serve as a ground for personal jurisdiction." *Id.* at *11.

Plaintiffs' barebones complaint lacks even the most basic showing of a basis for the Court to exercise specific personal jurisdiction.  Plaintiffs have not alleged that Smucker aimed any of its business activities at California such that Plaintiffs' claims could be deemed to "arise[] out of or relate[] to the defendant's forum-related activities."  *Schwarzenegger*, 374 F.3d at 802.  "What is needed—and what is missing here—is a connection between the forum and the specific claims at issue."  *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017).  Accordingly, Smucker asks the Court to dismiss this action for lack of personal jurisdiction.[4]

**B.**    **Plaintiffs Have Failed To Allege Sufficient Facts To Support A VPPA Violation**

To state a claim for a VPPA violation, Plaintiffs must plausibly allege (1) that Smucker is a "video tape service provider," (2) that Plaintiffs are "consumers," and (3) that Smucker knowingly disclosed Plaintiffs' personally identifiable information, including "specific video materials or services" Plaintiffs "requested or obtained." 18 U.S.C. § 2710(a)(1), (a)(3)–(4), (b)(1).  Plaintiffs' complaint should be dismissed because it fails to plead facts to support any of these elements.

**1.**    **Plaintiffs Have Not Plausibly Alleged That Smucker Is A Video Tape Service Provider**

The VPPA defines a "video tape service provider" as a "person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette

---

[4] Finally, though Smucker contends dismissal is the appropriate outcome, Smucker would not oppose a transfer of venue to the Northern District of Ohio where jurisdiction is proper, should the Court determine that such a transfer serves the interest of justice.  *See* 28 U.S.C § 1631 (permitting court that lacks jurisdiction to transfer an action, "in the interest of justice," to another court "in which the action . . . could have been brought at the time it was filed or noticed").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  In a widely cited decision, the Central District of California provided a framework for evaluating the scope of the definition of a "video tape service provider" under the VPPA in the Internet age.  *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1221–23 (C.D. Cal. 2017) (holding that Vizio, a manufacturer of smart televisions loaded with internet apps to enable users to access video content, was a video tape service provider under the VPPA).  The court opined that the word "business" in the phrase "*engaged in the business*" of delivery of video content "connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work."  *Id.* at 1221 (citations omitted).  Thus, while "Congress intended to cover more than just the local video rental store," it could not have intended the definition to extend to defendants whose products are not "substantially involved in the conveyance of video content to consumers" and "significantly tailored to serve that purpose."  *Id.*

By way of example, the court in *Vizio* described a letter carrier delivering a package containing a video, who is "obviously 'delivering' a video tape to a consumer" but "could not be characterized as 'engaged in *the business*' of delivering video content because her job responsibilities are in no way tailored to delivering packages that contain videotapes as opposed to any other package."  *Id.* at 1221.  Likewise, "developers of many other products or services that might be peripherally or passively involved in video content delivery do not fall within the statutory definition of a video tape service provider."  *Id.* at 1221–22.  These other products and services "are far too peripherally or passively involved in the delivery of video content to reasonably constitute 'the business' of delivering video content" under the VPPA's definition.  *Id.* at 1222.

Plaintiffs' complaint does not plausibly allege that Smucker, a company selling coffee products, some of which are referenced at Folgers Coffee website, is engaged in the business of renting, selling, or delivering of audio visual materials, as the VPPA requires.  Nowhere do Plaintiffs allege that the focus of Smucker's work—its "particular field of endeavor"—is delivering video content or that its products are substantially involved in the conveyance of video content, much less tailored to that purpose.  *Id.* at 1221.  Indeed, the Folgers Coffee website, which Plaintiffs incorporate by reference through citations and screenshots, *see e.g.*, Dkt. 16 at ¶¶ 17–18, provides no indication

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

whatsoever that Folgers is anything other than a consumer goods company selling coffee products.[5] *Contra In re Facebook, Inc.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (citing *Vizio*, 238 F. Supp. 3d at 1221) (finding plausible allegations that Facebook's business is "significantly tailored to serve th[e] purpose" of conveying video content to users, because Facebook "'regularly delivers' video content to users and maintains a cache of videos and visual materials, including from content providers like Netflix, for their delivery to users").

Plaintiffs cite a host of cases in an effort to stretch the definition of a video tape service provider under the VPPA to all "commercial website owners/operators," including, in the present case, a consumer goods company selling coffee products. Dkt. 16 at ¶ 17. Unlike Smucker, however, the defendants in each of those cases were either engaged in the media business or actually selling video media. *See Czarnionka v. Epoch Times Ass'n*, 2022 U.S. Dist. LEXIS 209067, at *2, 12 (S.D.N.Y. Nov. 17, 2022) (defendant is an "international newspaper and media company" in the business of "news programs, television shows, documentaries, movies, and other audiovisual content"); *Lebakken v. WEBMD, LLC*, No. 1:22-CV-644-TWT, 2022 U.S. Dist. LEXIS 201010, at *2, 8 n.2 (N.D. Ga. Nov. 4, 2022) (defendant is a provider of "online health information and medical news . . . through videos," that did not "specifically argue . . . that it is not a video tape service provider"); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-10810-RGS, 2022 U.S. Dist. LEXIS 168403, at *1–2 (D. Mass. Sep. 19, 2022) (defendant is a "multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms" that "creates, hosts, and disseminates hundreds, if not thousands, of videos" on its website); *Louth v. NFL Enter. LLC*, No. 1:21-cv-00405-MSM-PAS, 2022 U.S. Dist. LEXIS 163706, at *2 (D.R.I. Sep. 12, 2022) (defendant "owns and operates a mobile application . . . which disseminates 'live local and primetime games, exciting videos and highlights, and replays of every game'"); *Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 U.S. Dist. LEXIS 237326, at *1–2 (N.D. Cal. Apr. 5, 2019) (defendant "operates the retail websites walmart.com and mobile.walmart.com . . . where it sells a variety of consumer goods, including DVDs, Blu-ray Discs, video games, and other video media"); *In re Hulu Privacy Litig.*,

---

[5] The full content of the Folgers Coffee website is subject to judicial notice as part of Smucker's motion to dismiss. *See* Request for Judicial Notice and Exs. 1–4.

No. C 11-03764 LB, 2012 U.S. Dist. LEXIS 112916, at *5 (N.D. Cal. Aug. 10, 2012) (defendant "operates a website called Hulu.com that provides video content," including "news, entertainment, educational, and general interest programs").

Accordingly, Plaintiffs have failed to plausibly allege that Smucker falls within the range of defendants Congress intended by the VPPA.

### 2.    Plaintiffs Have Not Plausibly Alleged That They Are Consumers Of Goods Or Services From A Video Tape Service Provider

The VPPA protects "consumer[s]," which it defines as a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Accordingly, to state a claim under the VPPA, Plaintiffs must plausibly allege that they have one of these three transactional relationships with Smucker.

Plaintiffs fail to do so. Plaintiffs appear to rely exclusively on the VPPA's "purchaser" relationship, asserting that "Plaintiffs, like most Americans, have purchased, drank, and enjoyed Folgers Coffee and Defendants' related products. As such, Plaintiffs are both 'purchasers' and 'consumers' under the VPPA." Dkt. 16 at ¶ 36. Plaintiffs contend they meet the VPPA's definition of "purchaser" because they "have purchased Defendants' products multiple times in the past" and "have watched videos on the [Folgers Coffee website]." Dkt. 16 at ¶ 50. Plaintiffs' theory thus separates the "purchaser" relationship from the transaction to which the VPPA's right of privacy attaches.

By its terms, the VPPA provides a right of privacy in a purchase (or rental, or subscription) of "prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4); *see also* 18 U.S.C. § 2710(a)(1) & (a)(4) (defining a "consumer" as, among other things, "a purchaser . . . of goods or services from . . . any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of *prerecorded video cassette tapes or similar audio visual materials*") (emphasis supplied). The purpose of the VPPA, as stated in the Senate Report that accompanied it, is to create a transaction-based right of privacy: "to preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials." S. Rep. No. 100-599 at 1, 9 (1988). By way of example, the Senate report explains that "a department store

12

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products." *Id.* at 12. The VPPA does not create a right of privacy in the purchase of coffee because coffee is not a "good" or "service" within the meaning of the statute. Accordingly, Plaintiffs have not plausibly alleged that they are "purchasers" for purposes of a VPPA violation. Moreover, even if Plaintiffs could satisfy the "purchaser" requirement through coffee purchases—which they cannot—Plaintiffs have not even alleged when or where their purchases occurred, let alone that such purchases had any connection whatsoever to the website.

To the extent Plaintiffs intend to implicitly rely on one of the other two transactional relationships that the VPPA protects—a renter or subscriber relationship—their claims fail for several additional reasons. First, Plaintiffs have not alleged *any* facts regarding a rental of, or subscription to, "prerecorded video cassette tapes or similar audio visual materials" from Smucker. Even the most liberal interpretation of Plaintiffs' complaint provides no basis to construe allegations of a rental or a subscription sufficient to satisfy Rule 8(a)(2) of the Federal Rules of Civil Procedure. *See Self Directed Placement Corp. v. Control Data*, 908 F.2d 462, 466 (9th Cir. 1990) ("notice to the defendant of the mere existence of a grievance is not enough" to satisfy Rule 8(a)(2); "plaintiff must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery"). Second, Plaintiffs allegations do not satisfy the high bar for pleading a "subscriber" relationship under the VPPA: a plaintiff must "plausibly allege an association with [the defendant] that is sufficiently substantial and ongoing." *Vizio*, 238 F. Supp. 3d at 1223; *see also Ellis v. Cartoon Network*, 803 F.3d 1251, 1256 (11th Cir. 2015) (describing a "subscriber" under the VPPA as one who has "some type of commitment, relationship, or association (financial or otherwise)" with another entity); *Austin-Spearman v. AMC Network Entm't LLC*, 98 F.Supp.3d 662, 669 (S.D.N.Y. Apr. 7, 2015) (describing a "subscription" under the VPPA as "an exchange between subscriber and provider whereby the subscriber imparts money and/or personal information in order to receive a future and recurrent benefit"). Plaintiffs do not allege any form of ongoing relationship or exchange with Smucker to gain access to prerecorded video cassette tapes or similar audio visual materials, nor any relationship with Smucker other than

13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"playing videos on Defendants' Website" at least once and unspecified coffee purchases.  Dkt. 16 ¶ 37; *see Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1343 (11th Cir. 2017) (a subscriber relationship under the VPPA must be necessary "to gain access to" the content in question).  A subscriber must do something more than simply visit a website and play a video.

In fact, Plaintiffs readily acknowledge that they went to the Folgers Coffee website and casually consumed web content for the purpose of bringing this action, not to establish any transactional relationship with Smucker.  Dkt. 16 at ¶ 37.  But "casual consumption" of information on the Folgers Coffee website cannot provide the requisite "ongoing commitment or relationship" with Smucker to render Plaintiffs subscribers under the VPPA.  *See Austin-Spearman*, 98 F.Supp.3d at 668–71 ("[c]asual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristic of 'subscription'").  Indeed, Plaintiff Rodriguez apparently visited the Folgers Coffee website and played a video *after* Plaintiffs' counsel filed the original complaint in this action just so she could be joined as a plaintiff.  *See* Dkt. 16 at ¶ 37; Dkt. 1.  Viewing a publicly accessible website once does not make Plaintiffs "consumers" for VPPA purposes.  *Contra Hulu*, 2012 U.S. Dist. LEXIS 112916, at *22–23 (allegation that plaintiff "signed up for a Hulu account [to watch videos], became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services" were sufficient to create a subscriber relationship).  Plaintiffs' cause of action should be dismissed for this reason alone.

    **3.**    **Plaintiffs Have Not Plausibly Alleged That Smucker Disclosed "Specific Video Materials" that Plaintiffs "Requested or Obtained"**

The VPPA covers the disclosure of "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3); *see also In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (a VPPA plaintiff must allege the defendant's transmission of "the consumer's identity; the video material's identity; and the connection between them").

Here, Plaintiffs fail to plausibly allege that Smucker disclosed to Facebook the identity of any video that Plaintiffs watched.  Rather, Plaintiffs allege only that Smucker identified pages with video content.  *See* Dkt. 16 at ¶ 21 ("Defendants [*sic*] disclose a webpage's Universal Resource Locator

('URL')"), ¶ 22 ("Microdata discloses the video's title and other descriptors").   While Plaintiffs

suggest that certain cookies trigger the disclosure of "event" data "[w]hen a visitor watches a video on

Folgerscoffee.com," *id.* at ¶¶ 24, 31, 39, and include images that purport to demonstrate this disclosure,

*id.* at Figs. 3, 4, they conspicuously fail to identify any content in the images reflecting that Plaintiffs



actually ***played*** or interacted with a video, as opposed to simply loading a page containing video

content:

*Id.* at Figs. 3, 4.

As recently addressed in a similar case, generalized allegations regarding the disclosure of

webpages containing video content are insufficient to state a claim under the VPPA.  *See Martin v.*

*Meredith Corp.*, 2023 U.S. Dist LEXIS 27539, at * 10–11 (S.D.N.Y. Feb. 17, 2023) (dismissing

VPPA claims for failing to sufficiently allege disclosure of video materials viewed by consumer).  In

*Martin*, the plaintiff argued "that providing a URL associated with a video is sufficient to state a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

VPPA claim." *Id*. at * 10.  The court was unpersuaded and squarely rejected the Plaintiffs' contention:

> This argument fails.  A claim under the VPPA requires that the information disclosed identify a person "as having requested or obtained specific video materials or services from a video tape service provider."  18 U.S.C. § 2710(a)(3).  Simply sending a URL of a People.com webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services.  And even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on that page since the person may instead have merely reviewed an article on the page or opened the page and done nothing more.

*Id*. at *10–11.

As in *Meredith*, because Plaintiffs do not plausibly allege facts showing the disclosure by Smucker of information that Plaintiffs viewed or interacted with specific video content, they have failed to plead a VPPA violation.

### 4.    Plaintiffs Have Not Plausibly Alleged That Smucker Knowingly Disclosed Plaintiffs' Personally Identifiable Information

The VPPA requires Plaintiffs to plead facts sufficient to reasonably infer that Smucker knowingly disclosed personally identifiable information.  18 U.S.C. § 2710(b)(1); *Mollett v. Netflix, Inc*., No. 5:11-CV-01629-EJD, 2012 U.S. Dist. LEXIS 116497, at *11 (N.D. Cal. Aug. 17, 2012) (a plaintiff must "allege facts giving rise to a reasonable inference" that a defendant knowingly disclosed personally identifiable information to a third party).

Plaintiffs have not alleged that Smucker had access to or transmitted their identifying information to Facebook.  Rather, by way of descriptions of and citations to Facebook's processes and policies, Plaintiffs allege that identifying information existed in Facebook's "c_user," "fr," and "_fbp" cookies that caused *Plaintiffs' own browsers* to transmit their information to Facebook.  *See* Dkt. 16 at ¶¶ 24–27, 32–34, 51.  Indeed, while Plaintiffs suggest that Smucker somehow "compelled" their browser to transmit this information, the Facebook policy Plaintiffs cite extensively explains that Facebook places cookies in Plaintiffs' browsers, not Smucker.  *See* Dkt. 16 at ¶¶ 26 (citing Facebook, *Cookies & Other Storage Technologies*, https://www.facebook.com/policy/cookies) ("The cookies that we use include . . . persistent cookies, which stay in your browser until they expire or

you delete them . . . . For example, we use the 'c_user' . . . cookies . . . which have a lifespan of 365 days."); *see also Austin-Spearman*, 98 F. Supp. 3d at 664 ("through its 'c_user' cookie, Facebook's code allegedly forces a user's web browser to look for the user's Facebook ID"); *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 596 (9th Cir. 2020), *cert. denied sub nom. Facebook, Inc. v. Davis*, 141 S. Ct. 1684 (2021) ("When a user creates a Facebook account, more than ten Facebook cookies are placed on the user's browser.  These cookies store the user's login ID, and they capture, collect, and compile the referer headers from the web pages visited by the user.").  Because the alleged information was only ever contained in Facebook cookies that Facebook placed in Plaintiffs' browsers, Smucker never had Plaintiffs' purported identifying information and, accordingly, could not have disclosed it.

Plaintiffs' allegations about the "fr" and "_fbp" cookies likewise undermine Plaintiffs' cause of action because Plaintiffs acknowledge that these cookies do not convey information that identifies Plaintiffs—they transmit only "encrypted Facebook IDs and browser identifier[s]" or merely identify a browser without a Facebook ID.  *See* Dkt. 16 at ¶¶ 26–27 (alleging "[t]he fr cookie contains an encrypted Facebook ID and browser identifier" and "[t]he _fbp cookie contains . . . an unencrypted value that uniquely identifies a browser"); 18 U.S.C. § 2710(a)(3) (personally identifiable information is information which "identifies a person").[6]  Plaintiffs cannot pursue a VPPA violation without alleging that Smucker actually disclosed their personal identifying information, meaning "information that *identifies a specific person* and ties that person to particular videos that the person watched."  *See In re Hulu Privacy Litig.*, 2014 U.S. Dist. LEXIS 59479, at *28 (N.D. Cal. Apr. 28, 2014) (emphasis supplied).

In light of the above deficiencies, Plaintiffs allege that Facebook had to take extra steps to connect information about Plaintiffs' "event data" to Plaintiffs.  Plaintiffs allege that Facebook "uses

---

[6] Facebook requires users like Plaintiffs to consent to Facebook's collection of such information.  *See In re Meta Pixel Healthcare Litig*., No. 22-cv-03580-WHO, 2022 U.S. Dist. LEXIS 230754, at *17 (N.D. Cal. Dec. 22, 2022) ("Meta gives users the ability to control the use of information about their off-Facebook activity (such as activity on third-party websites) for advertising purposes" and "Users can 'disconnect' the off-Facebook activity that has been associated with their account—which prevents the data from being used for personalized advertising").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1 the fr, _fbp, and c_user cookies to *link* to Facebook IDs and corresponding Facebook profiles" and

2 "*combine[s]*" the information in these cookies with "event data" to determine "what

3 Folgerscoffee.com videos a user has watched." Dkt. 16 at ¶¶ 29, 31 (emphasis supplied). In other

4 words, the information purportedly disclosed did not identify Plaintiffs when their browsers

5 transmitted the information to Facebook and only became personal identifying information for

6 purposes of the VPPA when Facebook linked this information with other information in its

7 possession. Such disclosures are too attenuated to state a VPPA violation. *See Robinson v. Disney*

8 *Online*, 152 F. Supp. 3d 176, 180–82 (S.D.N.Y. 2015) (citing, among other authority, *Pruitt v.*

9 *Comcast Cable Holdings, LLC*, 100 F. App'x 713 (10th Cir. 2004)) (holding that no VPPA violation

10 occurred when Disney disclosed to a third party an individual's viewing history along with an

11 anonymized serial number because the third party had to "link[] these disclosures with existing

12 personal information obtained elsewhere"). The information disclosed "must itself do the identifying

13 that is relevant for purposes of the VPPA (literally, 'information which identifies')—not information

14 disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third

15 parties." *Id*. at 182 (quoting 18 U.S.C.S. § 2710(a)(3)).

16     At bottom, Plaintiffs allege that their own browsers, not Smucker, sent information to

17 Facebook as a result of a cookie placed by Facebook, and that Facebook had to link these disclosures

18 to other information it already had. These assertions cannot support a cause of action against Smucker

19 for "knowingly disclosing" their personal identifying information.

20                            **V.    CONCLUSION**

21     For the foregoing reasons, Smucker respectfully requests that the Court issue an order granting

22 this motion and awarding Smucker such other and further relief as the Court deems just and proper.[7]

23

24     / / /

25

26 ───────────────────────
27 [7] If the Court permits Plaintiffs to amend the complaint, Smucker asks for an order providing specific guidelines as to the level of specificity Plaintiffs must plead in its jurisdictional and merits allegations,
28 with an admonishment that filing another "cut and paste" complaint that fails to address the deficiencies in the present complaint will be grounds for dismissal without leave to amend.

18

1   DATED:  March 31, 2023

2                                           By: /s/ *Terence N. Hawley*
3                                           Terence N. Hawley
                                            Benjamin Watson
4                                           Quynh La

5                                           Attorneys for Defendant
6                                           THE J.M. SMUCKER COMPANY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

19