Terence N. Hawley (SBN 179106)
Email: thawley@reedsmith.com
Quynh La (SBN 341162)
Email: qla@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Phone: (415) 543-8700
Fax: (415) 391-8269

Benjamin Watson (SBN 306379)
Email: bwatson@reedsmith.com
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Phone: 213-457-8000
Fax: 213-457-8080

Attorneys for Defendant
THE J. M. SMUCKER COMPANY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH CARROLL and REBEKA RODRIGUEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE J. M. SMUCKER COMPANY, an Ohio corporation d/b/a FOLGERSCOFFEE.COM; and DOES 1 through 25, inclusive, <br><br> Defendants. | Case No. 3:22-cv-08952-WHA <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM** <br><br> Date:       May 25, 2023 <br> Time:      8:00 AM <br> Courtroom:  San Francisco Courthouse <br>                  Courtroom 12 – 19th Floor <br><br> Judge William Alsup |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF ARGUMENT .................................................................................. 1

II.  ARGUMENT ...................................................................................................... 2

    A.   Recruiting A California Plaintiff And Alleging Prior Purchases Do Not Resolve Plaintiffs' Deficient Personal Jurisdiction Allegations ................................... 2

        1.   Plaintiffs' Allegations Regarding Smucker's Widely-Accessible Brand Website Do Not Support Purposeful Direction As A Matter of Law ................................................................................................. 3

        2.   Plaintiffs Have Not And Cannot Allege That Smucker Targeted California .................................................................................... 5

        3.   Plaintiffs' Claims Do Not "Arise Out Of Or Relate To" Smucker's Forum-Related Activities ....................................................... 9

        4.   Plaintiffs' Argument That Exercising Jurisdiction Over Smucker is Reasonable Relies On Inapplicable Law And Unsupported Assertions ................................................................................... 10

    B.   Plaintiffs Have Not Stated A VPPA Violation ........................................ 11

        1.   Plaintiffs' Opposition Asks The Court To Read Only Part Of The Definition Of "Video Tape Service Provider" .................................. 11

        2.   Plaintiffs Concede That They Have Not Purchased Video Content And, Accordingly, Are Not "Consumers" Under The VPPA .................. 13

        3.   Plaintiffs Have Not Plausibly Alleged That Smucker Knowingly Disclosed "Specific Video Materials" that Plaintiffs "Requested or Obtained" .................................................................................. 14

III. CONCLUSION .................................................................................................. 15

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

i

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*All Enthusiast Inc. v. Gunter*,
5    2005 WL 1869395 (N.D. Cal. Aug. 4, 2005) ............................................................8

6  *AMA Multimedia, Ltd. Liab. Co. v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020) ....................................................................6, 7
7

8  *Ambrose v. Bos. Globe Media Partners LLC*,
    No. 21-10810-RGS, 2022 U.S. Dist. LEXIS 168403 (D. Mass. Sep. 19, 2022) ....................12

9  *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.*,
10    106 F. Supp. 2d 895 (N.D. Tex. 2000) ....................................................8

11  *Bernadino v. Barnes & Noble Booksellers, Inc.*,
    No. 17-CV-04570 (LAK) (KHP), 2017 U.S. Dist. LEXIS 129038 (S.D.N.Y. Aug.
12    11, 2017) ....................................................................................15

13  *Bernhardt v. Islamic Republic of Iran*,
    47 F.4th 856 (D.C. Cir. 2022) ..........................................................10
14

15  *Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ............................................................3
16

  *Bristol-Myers Squibb Co. v. Superior Court*,
17    582 U.S. 255 (2017)........................................................................10

18  *Calder v. Jones*,
    465 U.S. 783 (1984)........................................................................3
19

20  *Cappello v. Walmart Inc.*,
    No. 18-cv-06678-RS, 2019 U.S. Dist. LEXIS 237326 (N.D. Cal. Apr. 5, 2019)....................12

21
  *Czarnionka v. Epoch Times Ass'n*,
22    No. 22 Civ. 6348 (AKH), 2022 U.S. Dist. LEXIS 209067 (S.D.N.Y. Nov. 17,
    2022) ........................................................................................12
23

24  *DFSB Kollective Co. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. 2012) ..............................................5, 6, 7
25

  *Eichenberger v. ESPN, Inc.*,
26    876 F.3d 979 (9th Cir. 2017) ............................................................14

27  *Electro Scan, Inc. v. Henrich*,
    No. 2:18-cv-02689-JAM-EFB, 2019 U.S. Dist. LEXIS 47396 (E.D. Cal. Mar. 20,
28    2019) ........................................................................................6

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

ii

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Elofson v. Bivens*,
 No. 15-cv-05761-BLF, 2017 U.S. Dist. LEXIS 20218 (N.D. Cal. Feb. 13, 2017) ..................5

*Erickson v. Neb. Mach. Co.*,
 No. 15-cv-01147-JD, 2015 U.S. Dist. LEXIS 87417 (N.D. Cal. July 6, 2015)......................6

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
 141 S. Ct. 1017 (2021)...........................................................................................................10

*Freestream Aircraft (Bermuda) Limited v Aero Law Group*,
 905 F.3d 597 (9th Cir. 2018) ...................................................................................................3

*Gucci America, Inc. v. Wang Huoqing*,
 No. C-09-05969 JCS, 2011 U.S. Dist. LEXIS 783 (N.D. Cal. Jan. 3, 2011) ..........................8

*Helicopteros Nacionales De Colombia v. Hall*,
 466 U.S. 408 (1984)................................................................................................................10

*Hernandez v. Williams, Zinman & Parham PC*,
 829 F.3d 1068 (9th Cir. 2016) ...............................................................................................14

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
 485 F.3d 450 (9th Cir. 2007) ...................................................................................................4

*Humphrey v. The J.M. Smucker Co.*,
 No. 3:22-CV-06913-WHO (N.D. Cal. filed Nov. 4, 2022) ...................................................11

*Imageline, Inc. v. Mintskovsky*,
 No. CV 09-01869 SJO, 2009 U.S. Dist. LEXIS 137950 (C.D. Cal. June 16, 2009)
 (C.D. Cal. June 16, 2009) ........................................................................................................8

*In re Facebook, Inc.*,
 402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................................12

*In re Hulu Privacy Litig.*,
 86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..............................................................................14, 15

*In re Hulu Privacy Litig.*,
 No. C 11-03764 LB, 2012 U.S. Dist. LEXIS 112916 (N.D. Cal. Aug. 10, 2012) .................12

*In re Vizio, Inc., Consumer Privacy Litig.*,
 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .............................................................................12, 13

*IO Group, Inc. v. Pivotal, Inc.*,
 No. C 03-5286 MHP, 2004 U.S. Dist. LEXIS 6673 (N.D. Cal. Apr. 19, 2004)......................8

*Johnson v. UBS AG*,
 860 F. App'x 531 (9th Cir. 2021) ...........................................................................................10

iii

*Langer v. Kiser*,
  57 F.4th 1085 (9th Cir. 2023) ...................................................................................1

*Lebakken v. WEBMD, LLC*,
  No. 1:22-CV-644-TWT, 2022 U.S. Dist. LEXIS 201010 (N.D. Ga. Nov. 4, 2022) .............12

*Louth v. NFL Enter. LLC*,
  No. 1:21-cv-00405-MSM-PAS, 2022 U.S. Dist. LEXIS 163706 (D.R.I. Sep. 12, 2022) ...................................................................................................................................12

*Martin v. Meredith Corp.*,
  No. 22cv4776 (DLC), 2023 U.S. Dist LEXIS 27539 (S.D.N.Y. Feb. 17, 2023)....................15

*Massie v. Gen. Motors Co.*,
  No. 1:20-cv-01560-JLT, 2021 U.S. Dist. LEXIS 99945 (E.D. Cal. May 25, 2021) ...............7

*Mavrix Photo Inc. v. Brand Techs. Inc.*,
  647 F.3d 1218 (9th Cir. 2011) ...........................................................................3, 4, 7

*Menken v. Emm*,
  503 F.3d 1050 (9th Cir. 2007) ......................................................................................9

*Online Partners.Com, Inc. v. Atlanticnet Media Corp.*,
  No. C 98-4146 SI ENE, 2000 U.S. Dist. LEXIS 783 (N.D. Cal. Jan. 18, 2000).....................8

*Pac. Overlander, LLC v. Kauai Overlander*,
  No. 18-cv-02142-KAW, 2018 U.S. Dist. LEXIS 135567 (N.D. Cal. Aug. 10, 2018) ...................................................................................................................................6

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) ...........................................................................3, 7, 8

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2014) ......................................................................................8

*Piterman v. Gold Coast Exotic Imps. LLC*,
  No. 5:20-cv-07724-EJD, 2021 U.S. Dist. LEXIS 89103 (N.D. Cal. May 10, 2021) ...............4

*Regal Art & Gifts, Inc. v. Fusion Prods.*,
  No. 15-cv-04363-KAW, 2016 U.S. Dist. LEXIS 14506 (N.D. Cal. Feb. 5, 2016) ..................8

*Salu, Inc. v. Original Skin Store*,
  No. CIV. S-08-1035 FCD/KJM, 2008 U.S. Dist. LEXIS 73225 (E.D. Cal. Aug. 13, 2008) ...................................................................................................................................8

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ......................................................................................3

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Starlight Int'l, LTD. LP v. Lifeguard Health, LLC*,
No. C 08-1894 RS, 2008 U.S. Dist. LEXIS 58927 (N.D. Cal. July 22, 2008)..........................8

*Stomp, Inc. v. NeatO, LLC*,
61 F. Supp. 2d 1074 (C.D. Cal. 1999) .....................................................................................9

*Symantec Corp. v. Global Impact, Inc.*,
No. 07cv0126 DMS (NLS), 2007 U.S. Dist. LEXIS 112746 (S.D. Cal. Sept. 20,
2007) ..........................................................................................................................................8

*ThermoLife Int'l, Ltd. Liab. Co. v. NetNutri.com Ltd. Liab. Co.*,
813 F. App'x 316 (9th Cir. 2020) ....................................................................................6, 10

*Walden v. Fiore*,
571 U.S. 287 (2014).................................................................................................................7

*Wine Grp. Ltd. Liab. Co. v. Levitation Mgmt., Ltd. Liab. Co.*,
No. Civ. 2:11-1704 WBS JFM, 2011 U.S. Dist. LEXIS 115740 (E.D. Cal. Oct. 5,
2011) ..........................................................................................................................................5

*Xu v. Nobel Assembly at Karolinska Institutet*,
No. SACV 13-320-JST, 2013 U.S. Dist. LEXIS 143632 (C.D. Cal. Sep. 17, 2013) ...............5

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ............................................................................................9, 10

## Statutes

18 U.S.C. § 2710(a)(1)...............................................................................................................13

18 U.S.C. § 2710(a)(3)...............................................................................................................14

18 U.S.C. § 2710(a)(4)...............................................................................................11, 12, 13

18 U.S.C. § 2710(b)(1) ..............................................................................................................14

## Other Authorities

S. Rep. No. 100-599 (1988) .......................................................................................................13

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REPLY IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:22-CV-08952-WHA

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

# I.   SUMMARY OF ARGUMENT

Plaintiffs' Opposition responds to a host of arguments defendant J. M. Smucker Company ("Smucker") did not make[1] but fails to show that Plaintiffs have established personal jurisdiction over Ohio-based Smucker or stated a plausible claim against Smucker under the Video Privacy Protection Act ("VPPA").  Their amended allegations are no less deficient than their first attempt.

First, Plaintiffs' amended complaint and Opposition offer no basis for specific personal jurisdiction over Smucker, despite the addition of Plaintiff Rodriguez, a California resident, who joins Plaintiff Carroll, now revealed to be a Virginia resident.  Plaintiffs still fail to identify any conduct aimed at California residents and do not dispute that *all* of Smucker's alleged conduct occurred outside of California.  Instead, the sole basis alleged for bringing this dispute in California is that new Plaintiff Rodriguez accessed the Folgers Coffee website in California after this suit was filed, all but abandoning their jurisdictional allegations as to Plaintiff Carroll.  Courts have soundly rejected the theory that a nonresident company submits to jurisdiction in any state where its websites are available.  Rather, a company submits to jurisdiction where it purposefully directs its actions to target residents, but only as to claims that arise from or relate to those actions.  Plaintiffs have not and cannot allege that Smucker targeted California residents through the Folgers Coffee website and their jurisdictional claims fail under Ninth Circuit precedent.

Second, Plaintiffs' Opposition does not address the pleading deficiencies in their claim under the VPPA, which creates a right of privacy in the videos a consumer requests or obtains from an entity that rents, sells, or delivers video content.  Plaintiffs provide no authority to endorse their efforts to extend the VPPA to Smucker, which is not in the business of delivering video content (the business the VPPA regulates).  In addition, Plaintiffs cannot state a VPPA claim because they are not "consumers" for purposes of the VPPA.  To be a consumer, Plaintiffs must have rented, purchased,

---

[1] Smucker's references to other "tester" VPPA actions brought by Plaintiffs' counsel illustrate that, far from being "robust," Plaintiffs' allegations were largely copied and pasted from those actions. *See* Dkt. 26, nn.1–2.  While the Court need not wade into those actions to assess the deficiency of Plaintiffs' allegations here, Smucker's references were relevant and appropriate.  Further, Plaintiffs' attempt to compare themselves to repeat litigants in ADA access cases is inapt. *See Langer v. Kiser*, 57 F.4th 1085, 1095 (9th Cir. 2023).

or subscribed to video content (the transactions the VPPA protects).  Plaintiffs allege only that they purchased Folgers *coffee products* at some point in their life and separately watched a video on the Folgers Coffee website in order to bring this lawsuit, which is not sufficient.  Nor have Plaintiffs plausibly alleged that Smucker knowingly disclosed information that identified Plaintiffs as requesting or obtaining specific videos (the information the VPPA shields from disclosure).  Plaintiffs allege only that their web browsers, via a Facebook Pixel, disclosed to Facebook the content, title, and location of a video on Smucker's website, along with information Facebook can use to identify Plaintiffs.  But disclosing that Plaintiffs visited a web page that includes a video, even if imputed to Smucker, is not the same as disclosing a specific video that Plaintiffs viewed.

The Court should not permit further prejudice to Smucker by indulging Plaintiffs with a third attempt to extend the VPPA to a consumer goods company.  Smucker asks the Court to dismiss Plaintiffs' amended complaint with prejudice.

## II.     ARGUMENT

### A.     Recruiting A California Plaintiff And Alleging Prior Purchases Do Not Resolve Plaintiffs' Deficient Personal Jurisdiction Allegations

The Opposition concedes that Smucker is not subject to general personal jurisdiction in California.  *See* Dkt. 29 at p. 2.[2]  Thus, to support specific personal jurisdiction, Plaintiffs acknowledge what was already self-evident: that Plaintiffs' counsel recruited California-based Plaintiff Rodriguez after Smucker stated that it would move to dismiss the original complaint (brought by Virginia-based Plaintiff Carroll) for failing to allege a basis for jurisdiction over Ohio-based Smucker.[3]  Plaintiff Rodriguez's declaration explains that she visited the Folgers Coffee website to watch a video shortly before Plaintiffs amended their complaint.  *See* Dkt. 29-1 at ¶¶ 2–3.

Neither the addition of Plaintiff Rodriguez nor Plaintiffs' new allegations regarding unrelated past purchases of Folgers coffee (which are not listed in Rodriguez's declaration) satisfy Plaintiffs' burden on the first two prongs of the Ninth Circuit's three-prong test for specific jurisdiction.

---

[2] Throughout this Reply, Smucker uses Plaintiffs' footer page numbers, not the ECF page numbers.

[3] As stipulated, the Parties "conferred regarding Defendant's intention to file a motion to dismiss, and Plaintiff informed Defendant that he intends to file a First Amended Complaint[.]" Dkt. 15 at p. 2.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

2

1   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ("If the plaintiff fails

2   to satisfy either of these prongs, personal jurisdiction is not established in the forum state").

3          Plaintiffs fail to satisfy the first prong (requiring that defendant "purposefully direct [their]

4   activities or consummate some transaction with the forum or resident thereof") because operating a

5   widely-available passive website is not, as a matter of law, an act purposefully directed toward

6   California residents.  *See Boschetto v. Hansing*, 539 F.3d 1011, 1016–18 (9th Cir. 2008).  In fact,

7   Plaintiffs' Opposition incorrectly relies on the purposeful *availment* standard, which is not applicable

8   to their claim.  Plaintiffs also fail to satisfy the second prong (requiring that the claim "arises out of

9   or relates to the defendant's forum-related activities") because Plaintiffs' jurisdiction allegations are

10  separate from and unrelated to the allegations underlying their cause of action.  *Id* [4]

11      **1.      Plaintiffs' Allegations Regarding Smucker's Widely-Accessible Brand Website**

12              **Do Not Support Purposeful Direction As A Matter of Law**

13          The Ninth Circuit's standard for purposeful direction is well-established: for a court to

14  exercise specific jurisdiction over a defendant based upon an act that "takes place outside the forum

15  state" but allegedly has "effects inside the forum state," the plaintiff must establish that a defendant

16  "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

17  defendant knows is likely to be suffered in the forum state."  *Freestream Aircraft (Bermuda) Limited*

18  *v Aero Law Group*, 905 F.3d 597, 603–04, 603 n.3 (9th Cir. 2018) (quoting *Calder v. Jones*, 465 U.S.

19  783 (1984).  There must be "'something more' than just a foreseeable effect to conclude that personal

20  jurisdiction is proper."  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006).

21          Where the basis for purposeful direction is "commercial activity that an entity conducts over

22  the internet," the Ninth Circuit uses a "sliding scale test" that examines the "level of interactivity and

23  commercial nature of the exchange" occurring on a website to determine whether operating that

24  website amounts to conduct "expressly aimed" at the forum.  *See Mavrix Photo Inc. v. Brand Techs.*

25  *Inc.*, 647 F.3d 1218, 1226–27 (9th Cir. 2011) (citations omitted).  While an "active" website through

26

27  [4] Plaintiffs attempt to shift their jurisdictional burden to Smucker by citing a California state court
    standard applicable "[w]hen a defendant moves to quash service of process."  Dkt. 29 at p. 3.
28  Smucker has not moved to quash service of process.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   which a defendant "clearly does business over the Internet" and "enters into contracts with residents"

2   supports jurisdiction, a "passive" website on which a defendant "has simply posted information" that

3   "is accessible to users in foreign jurisdictions" does not. *Id.* at 1226–27, 1228. The focus is on

4   whether the defendant did "something more" to "individually target[]" forum residents and "the

5   geographic scope of the defendant's commercial ambitions." *Id.* at 1229.

6       Plaintiffs' purposeful direction theory is that Smucker made its Folgers Coffee website

7   available to California residents, which Plaintiff Rodriguez, a California resident, accessed to watch

8   a video in California. Dkt. 16 at ¶¶ 18–19, 21, 29; Dkt. 29-1 at ¶¶ 2–3. Plaintiffs' Opposition now

9   concedes that these allegations are not sufficient by asking the Court to "infer" that the Folgers Coffee

10  website is sufficiently "interactive" to provide a basis for personal jurisdiction. To that end, Plaintiffs

11  append screengrabs from that website to establish that users may (1) sign up to receive emails, (2)

12  search the website, (3) contact Folgers, and (4) locate entities that sell Folgers Coffee.[5] But Plaintiffs

13  have not cited ***a single case*** holding that any of these purportedly "interactive" features support an

14  inference that Smucker purposefully directed its actions toward California.

15      Cases applying the Ninth Circuit's "sliding-scale test" have reached the opposite conclusion,

16  namely, that widely-accessible brand websites that provide product information are "passive," not

17  "active." *See Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007) (a

18  website that "does not provide any direct means for purchasing parts or requesting services" but

19  "simply provides information on the various products manufactured by [defendant] and redirects

20  potential customers to the appropriate subsidiary" is a passive website); *Piterman v. Gold Coast

21  Exotic Imps. LLC*, No. 5:20-cv-07724-EJD, 2021 U.S. Dist. LEXIS 89103 at * 12–13 (N.D. Cal. May

22  10, 2021) (a website offering product information was a passive website, not an "active" website,

23  "even though the . . . website at issue may be viewed nationwide").

24      In fact, courts in the Ninth Circuit have held that the same "interactive" features Plaintiffs rely

25  upon render a website "passive" and are insufficient to support an inference that a website

26

27  _____

    [5] The Opposition barely mentions Plaintiff Carroll, a Virginia resident, much less allege that he has
    any contacts with California, nor even that he accessed the Folgers website in California. Plaintiffs
28  thereby appear to concede that the Court lacks personal jurisdiction over Smucker as to his claims.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

individually targets California residents in the absence of "something more."  *See Elofson v. Bivens*, No. 15-cv-05761-BLF, 2017 U.S. Dist. LEXIS 20218, at *26–27 (N.D. Cal. Feb. 13, 2017) (website that permits users to make inquiries by "submit[ting] their name, email address, and telephone number," "ask a question," or "sign up for an online email" is not interactive without "something more," such as "target[ing] California residents" or "offer[ing] any special information or incentives to California residents"); *Xu v. Nobel Assembly at Karolinska Institutet*, No. SACV 13-320-JST (ANx), 2013 U.S. Dist. LEXIS 143632, at *2–3, 13–14 (C.D. Cal. Sep. 17, 2013) (finding that a website that "direct[s] visitors to sign up for a monthly newsletter, to 'follow' the Defendant on social media websites, and provide information on contacting the Defendant by email" was not "targeted to Californians" and is "a non-commercial passive website" that "is insufficient to satisfy the express aiming prong"); *Wine Grp. Ltd. Liab. Co. v. Levitation Mgmt., Ltd. Liab. Co.*, No. Civ. 2:11-1704 WBS JFM, 2011 U.S. Dist. LEXIS 115740, at *17–18 (E.D. Cal. Oct. 5, 2011) ("There is a 'Contact Us' link consumers can click on to send an email to defendants, but such features do not make a website 'interactive.'").  Accordingly, the "interactive" features Plaintiffs have identified in their Opposition are "passive" as a matter of law in the Ninth Circuit—and the Court can reach this conclusion on the papers before it, including Smucker's Request for Judicial notice concerning the Folgers Coffee website.  *See* Dkt. 26-1.  As the next section explains, Plaintiffs have failed to allege that the Folgers Coffee website does "something more" to individually target California residents.

### 2.    Plaintiffs Have Not And Cannot Allege That Smucker Targeted California

Plaintiffs argue that when a commercial websites does anything more than "merely provide information about the site's sponsor," it automatically submits to specific personal jurisdiction unless it takes steps to prevent users from accessing the website.  Dkt. 29 at p. 4, 8.  This misstates the Ninth Circuit's purposeful direction precedent, which reaches the opposite conclusion: if a defendant "merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."  *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 881 (N.D. Cal. 2012) (applying the Ninth Circuit's *Mavrix* decision).  While "[t]he operation of an interactive, commercial website helps determine the likelihood that personal jurisdiction can be exercised," the fact "that a

5

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   website is commercial in nature and interactive does not necessarily mean there is personal

2   jurisdiction." *Id.* at 880–81 (citation omitted).  Rather, "[c]ourts look to the level of interactivity and

3   commercial nature of the exchange of information that occurs on the Web site to determine if

4   sufficient contacts exist to warrant the exercise of jurisdiction." *Id.* at 881 (citation omitted).

5        Plaintiffs do not allege that the Folgers Coffee website, nor any video they watched, even

6   referenced California.  Rather, they allege only that Plaintiff Rodriguez accessed the website there.

7   Dkt. 29 at p. 10.  That Smucker "might have had a California customer or that [it's] website is

8   available in California is, alone, insufficient . . . [w]ithout some showing that [Smucker] specifically

9   targeted California[.]" *Pac. Overlander, LLC v. Kauai Overlander*, No. 18-cv-02142-KAW, 2018

10  U.S. Dist. LEXIS 135567, at *14–15 (N.D. Cal. Aug. 10, 2018).  Plaintiffs have not alleged, for

11  example, that any "sales [Smucker] made to California entities were made through its website," nor

12  even "that the website, or even a section of it, contained content tailored for California residents."

13  *Erickson v. Neb. Mach. Co.*, No. 15-cv-01147-JD, 2015 U.S. Dist. LEXIS 87417, at *12–14 (N.D.

14  Cal. July 6, 2015) (rejecting plaintiff's allegation that defendants' website is "highly interactive").

15       In fact, Plaintiffs have not even alleged that the Folgers Coffee website is designed to appeal

16  to the California market specifically, as opposed to all United States markets or global markets

17  generally.  *See AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1212 (9th Cir. 2020) (no

18  specific jurisdiction based on targeting the United States market absent a showing that defendant

19  "was motivated by a desire to appeal to the U.S. market or generate more U.S. users, as opposed to

20  more users globally").  Plaintiffs cannot rely on "nonspecific, nationwide" activity to establish

21  specific personal jurisdiction because "any contact with [California] would be 'random, fortuitous,

22  or attenuated.'"  *ThermoLife Int'l, Ltd. Liab. Co. v. NetNutri.com Ltd. Liab. Co*., 813 F. App'x 316,

23  318 (9th Cir. 2020); *Electro Scan, Inc. v. Henrich*, No. 2:18-cv-02689-JAM-EFB, 2019 U.S. Dist.

24  LEXIS 47396, at *14 (E.D. Cal. Mar. 20, 2019) ("Without facts showing [the defendant] specifically

25  targeted California, the operation of an internationally accessible website is insufficient to serve as a

26  ground for personal jurisdiction").

27       To the extent Plaintiffs would like the Court to infer that the Facebook Pixel targets or

28  distinguishes California residents from residents of any other state, this argument fails.  Even if

6

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   Facebook's conduct could somehow be imputed to Smucker, the Ninth Circuit recently rejected the

2   theory that geographically-targeted online advertising satisfies the "express aiming" requirement:

> If geo-located advertisements constituted express aiming, [defendant] could be said to
> expressly aim at *any* forum in which a user views the website.  As we recognized
> in *Mavrix*, "[n]ot all material placed on the Internet is, solely by virtue of its universal
> accessibility, expressly aimed at every [forum] in which it is accessed."  647 F.3d at
> 1231.  As a feature of the geo-located advertisements on [defendant's] website, all users
> in every forum received advertisements directed at them.  **To find specific jurisdiction
> based on this would run afoul of the Supreme Court's directive in *Walden* and
> "impermissibly allow[] a plaintiff's contacts with the defendant and forum to
> drive the jurisdictional analysis**."  *Walden [v. Fiore]*, 571 U.S. [277,] 289 [(2014)].

9   *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1211 (9th Cir. 2020); *see also Massie v.*

10  *Gen. Motors Co.*, No. 1:20-cv-01560-JLT, 2021 U.S. Dist. LEXIS 99945, *12–13, 19 (E.D. Cal. May

11  25, 2021) (software that "records . . . website sessions from users nationwide" and collects users'

12  "location at the time of the visit" does not support jurisdiction because defendant did not "target

13  California or distinguish California from any other state where [defendant's] website is accessible").[6]

14      At bottom, the Ninth Circuit requires a foreign website's forum-specific focus to be

15  abundantly evident, not "inferred" as Plaintiffs suggest.  *See Mavrix*, 647 F.3d. at 1230 (examining

16  the "subject matter" of the defendant's website, with "a specific focus on the California-centered

17  celebrity and entertainment industries," and concluding that the California "audience is an integral

18  component of [defendant's] business model and its profitability"); *accord Walden*, 571 U.S. at 287

19  (for personal jurisdiction to exist, the forum state must be the "focal point [of defendant's actions]

20  and of the harm suffered"); *Pebble Beach*, 453 F.3d at 1156 (same).  This case is not about any act

21  or conduct that Smucker directed at California.  Rather, Plaintiffs came to Smucker by accessing a

22  Smucker-brand website solely to bring this lawsuit.  But operating a widely accessible website is

23  insufficient, in itself, to satisfy Plaintiffs' burden to show purposeful direction.

24      Finally, Plaintiffs incorrectly invoke the "purposeful availment" standard for specific personal

25  jurisdiction.  *See* Dkt. 29 at pp. 2, 5–6.  The purposeful availment standard applies to contract claims

---

[6] In the same vein, district courts have found that a company's decision to use California-based
companies like Facebook for marketing purposes does not satisfy the "express aiming" requirement.
*See DFSB Kollective*, 897 F. Supp. 2d at 883 ("To adopt Plaintiffs' reasoning would render the
'expressly aimed' prong of the *Calder* test essentially meaningless").

where the inquiry is whether the defendant "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State[.]" *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2014) (citations omitted). The purposeful direction standard applies to tort claims, where the inquiry is whether the defendant "directed his actions at the forum state, even if those actions took place elsewhere." *Id.*; *see also Pebble Beach*, 453 F.3d at 56 (applying this standard to a tort claim). Plaintiffs describe their cause of action as a "tort action" and assert no cause of action arising in contract or quasi-contract. Dkt. 29 at p. 12.

Even if Plaintiffs had asserted a claim sounding in contract, they could not rely on a purposeful availment theory that depends on allegations of purchases and sales of Folgers Coffee *in California*. First, neither Plaintiff pleads any facts regarding their supposed coffee purchases, such as where, when, or how they occurred, nor do they tie those purchases to the website. Second, alleged coffee purchases cannot support jurisdiction in any event because those allegation are not the basis for their VPPA claim, which alleges harm from *viewing videos* on the Folgers Coffee website. *See* Dkt. 16 at ¶¶ 6, 36. Not surprisingly, every purposeful availment case Plaintiffs cite undermines their reliance on this theory because the claims in those cases were tied to the defendant's contacts in the forum.[7]

---

[7] *See Regal Art & Gifts, Inc. v. Fusion Prods.*, No. 15-cv-04363-KAW, 2016 U.S. Dist. LEXIS 14506, at *3, 14–15 (N.D. Cal. Feb. 5, 2016) (copyright infringement claim based on products sold to California residents); *Gucci America, Inc. v. Wang Huoqing*, No. C-09-05969 JCS, 2011 U.S. Dist. LEXIS 783, at *5, 23–24 (N.D. Cal. Jan. 3, 2011) (claims based on sale of counterfeit goods to California customers); *Imageline, Inc. v. Mintskovsky*, No. CV 09-01869 SJO (JCx), 2009 U.S. Dist. LEXIS 137950, at 17–18 (C.D. Cal. June 16, 2009) (C.D. Cal. June 16, 2009) (copyright infringement claim based on products sold to California residents); *Starlight Int'l, LTD. LP v. Lifeguard Health, LLC*, No. C 08-1894 RS, 2008 U.S. Dist. LEXIS 58927, at *16–18 (N.D. Cal. July 22, 2008) (trademark infringement claim based on advertisements at a California tradeshow); *Salu, Inc. v. Original Skin Store*, No. CIV. S-08-1035 FCD/KJM, 2008 U.S. Dist. LEXIS 73225, at *15–17 (E.D. Cal. Aug. 13, 2008) (trademark infringement claim based on goods sold to California residents); *Symantec Corp. v. Global Impact, Inc.*, No. 07cv0126 DMS (NLS), 2007 U.S. Dist. LEXIS 112746, at *10–11 (S.D. Cal. Sept. 20, 2007) (claims based on sale of counterfeit software to California residents); *All Enthusiast Inc. v. Gunter*, 2005 WL 1869395, at *3 (N.D. Cal. Aug. 4, 2005) (Alsup, J.) (asserting contract claims based on an agreement governed by California law and conversion claims based on sales to California residents); *IO Group, Inc. v. Pivotal, Inc.*, No. C 03-5286 MHP, 2004 U.S. Dist. LEXIS 6673, at *4 (N.D. Cal. Apr. 19, 2004) (copyright infringement claim based on products sold to California residents); *American Eyewear, Inc. v. Peeper's Sunglasses and Accessories, Inc.*, 106 F. Supp. 2d 895, 900 (N.D. Tex. 2000) (trademark infringement claim based on sales to Texas residents); *Online Partners.Com, Inc. v. Atlanticnet Media Corp.*, No. C 98-4146

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

8

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

3.      **Plaintiffs' Claims Do Not "Arise Out Of Or Relate To" Smucker's Forum-Related Activities**

Plaintiffs' Opposition argues that their VPPA claim "arises out of or relates to Defendant's forum related activities" because "[i]f Defendant had not made its Website available to California residents, Plaintiff Rodriguez's privacy-related claim under the VPPA would not have arisen." Dkt. 29 at 10. The problem with this argument is that Plaintiffs have not alleged *any* forum-specific conduct. Though Plaintiffs allege purchases and sales of Folgers Coffee, they do not specifically allege they purchased Folgers coffee in or from California (and as explained in Sections II-A-1 and 2, making a passive website available in a forum is not forum-specific conduct). These purchases and sales are not even the basis for Plaintiffs' VPPA cause of action and, thus, cannot satisfy Plaintiffs' burden to "show that [they] would not have suffered an injury 'but for' [defendant's] forum-related conduct." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). There must be "a direct nexus exists between [a defendant's] contacts [with the forum state] and the cause of action." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023).

The factual basis for Plaintiffs' VPPA claim is Smucker's conduct in Ohio ("creat[ing], host[ing], and deliver[ing] videos on the Website" and "utiliz[ing] the Facebook Tracking Pixel"), which Smucker purportedly directed at Plaintiff Rodriguez, a California resident. *See* Dkt. 16 at ¶ 49; Dkt. 29 at p. 12. Yet Plaintiffs' factual basis for specific jurisdiction over Smucker is that Folgers Coffee "is in thousands of stores in California and this District" and that Plaintiffs "purchased, drank, and enjoyed Folgers Coffee" from unspecified sources in unspecified places at unspecified times.[8] Dkt. 16 at ¶¶ 6, 36. Plaintiffs' VPPA claim does not relate to, much less arise out of, Smucker's sales or Plaintiffs' unspecified purchases of Folgers Coffee. Plaintiffs are relying on conduct ***unrelated to their claim*** to support personal jurisdiction.

---

SI ENE, 2000 U.S. Dist. LEXIS 783 (N.D. Cal. Jan. 18, 2000) (trademark infringement claim based on subscriptions by California residents); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1079 (C.D. Cal. 1999) (patent dispute over technology sold to California residents).

[8] To the extent Plaintiffs ask the Court to infer that their claim arises out of or relates to any purportedly "interactive" features on the Folgers Coffee website, no such inference is warranted. Plaintiffs have not pled any allegations that connect these features to their cause of action.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

The Supreme Court and the Ninth Circuit have resolved this issue against Plaintiffs. "[E]ven regularly occurring sales of a product in a [s]tate do not justify the exercise of jurisdiction over a claim *unrelated* to those sales." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017) (citation omitted); *see also Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 418 (1984) ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."). Where, as here, "a defendant has reached out beyond its home and exploited a market in the forum, the plaintiff's claims still must arise out of or relate to the defendant's contacts with the forum." *Johnson v. UBS AG*, 860 F. App'x 531, 533 (9th Cir. 2021); *accord ThermoLife*, 813 F. App'x at 318 (affirming dismissal for lack of personal jurisdiction based on a "highly interactive" website and product sales unconnected to the plaintiffs' claims). Indeed, just last month, the Ninth Circuit recognized that giving the words "'relate to' too broad a scope would risk 'collaps[ing] the core distinction between general and specific personal jurisdiction.'" *Yamashita*, 62 F.4th at 506 (citing *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021); quoting *Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 866 (D.C. Cir. 2022)).

Plaintiffs' Opposition points to no claim-related conduct by Smucker in California. Accordingly, Smucker asks the Court to dismiss this action for lack of personal jurisdiction.[9] Alternatively, Smucker would not oppose a transfer of venue to the Northern District of Ohio where jurisdiction is proper, should the Court determine that such a transfer serves the interest of justice, pursuant to 28 U.S.C § 1631.

### 4.    Plaintiffs' Argument That Exercising Jurisdiction Over Smucker is Reasonable Relies On Inapplicable Law And Unsupported Assertions

Plaintiffs' suggestion that exercising jurisdiction over Smucker would be reasonable largely relies on California state law that is inapplicable here (or no law at all) and simply rehashes the same deficient arguments it asserted in support of jurisdiction (e.g., Smucker's website is "substantially

---

[9] Plaintiffs' amended complaint and Opposition appear to concede this Court has no specific personal jurisdiction over Smucker with regard to nonresident Plaintiff Carroll's cause of action. As argued in Smucker's motion, Plaintiff Carroll's failure to allege that he accessed the Folgers Coffee website in California is independently fatal to his cause of action here. *See Bristol-Myers*, 582 U.S. at 259.

10

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

interactive").  Plaintiffs' reference to another pending action involving Smucker in California is puzzling but irrelevant, given that the factual basis for jurisdiction is unique to each case.  *See* Dkt. 29 at p. 12 (citing *Humphrey v. The J.M. Smucker Co.*, No. 3:22-CV-06913-WHO (N.D. Cal. filed Nov. 4, 2022).  A cursory review of the pleadings in that case would have indicated to Plaintiffs that it concerns claims regarding products sold to California consumers, unlike this action.  Further, Plaintiffs' assertion that exercising jurisdiction over Smucker does not conflict with the sovereignty of Ohio relies on authority concerning "foreign nations" that is not applicable here.  In any event, Ohio has an interest in protecting its companies from being haled into foreign jurisdictions by foreign plaintiffs over conduct that occurred in Ohio.  While California may have an interest in ensuring that out-of-state companies comply with the VPPA when interacting with California residents, that interest does not absolve those residents from establishing a basis for jurisdiction.  Finally, Plaintiffs' convenience argument based on Plaintiff Rodriguez's alleged California-resident status entirely ignores the inconvenience to Plaintiff Carroll, a Virginia resident, and to Smucker.

**B.  Plaintiffs Have Not Stated A VPPA Violation**

**1.   Plaintiffs' Opposition Asks The Court To Read Only Part Of The Definition Of "Video Tape Service Provider"**

Plaintiffs ask the Court to expand the VPPA's definition of a "video tape service provider" to all "commercial website owners/operators" regardless of whether they are engaged in the media business or actually selling video media.  Dkt. 29 at 14–15.  But to do so, the Court must read only the first part of that definition — "any person, engaged in the business, in or affecting interstate or foreign commerce" — while ignoring the rest of it, which states "of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  There is no basis in the plain language of the VPPA to ignore any part of this statutory definition.  Plaintiffs know this, so their Opposition points to cases in which "numerous federal courts" have interpreted the VPPA's definition to include "commercial website owners/operators."  Dkt. 29 at 14.  This assertion is inaccurate.

First, ***none of the decisions Plaintiffs cite interpret the VPPA to govern "commercial website owners/operators."***  These cases assess whether the VPPA extends to new audiovisual technologies

11

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   (e.g. streaming videos and DVDs vs. video cassettes), which is not at issue here.  Second, these

2   decisions reveal no basis to extend the VPPA to all "commercial website owners/operators" that do

3   not sell, rent, or offer subscriptions to video media because *every decision involved a defendant*

4   *engaged in the video media business and/or actually selling video media*.[10]

5       Congress never countenanced expanding the VPPA to a consumer goods company that does

6   not even sell video media simply because that company put a product-related video on a brand

7   website.  As one widely-cited Central District of California decision opined, while "Congress

8   intended [the VPPA] to cover more than just the local video rental store . . . [,] the defendant must be

9   in the business of delivering video content[.]"  *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F.

10  Supp. 3d 1204, 1221 (C.D. Cal. 2017) (holding that Vizio, a manufacturer of smart televisions loaded

11  with internet apps to enable users to access video content, was a video tape service provider under

12  the VPPA) (citations omitted).  The word "business" in the phrase "*engaged in the business*" of

13  delivery of video content "connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's

14  work." *Id.* (quoting 18 U.S.C. § 2710(a)(4)).  Congress could not have intended that definition to

15  extend to companies like Smucker, whose products are not "substantially involved in the conveyance

16  of video content to consumers" and "significantly tailored to serve that purpose."  *Id. Contra In re*

17  *Facebook, Inc.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (citing *Vizio*, 238 F. Supp. 3d at 1221)

18

---

19  [10] *Czarnionka v. Epoch Times Ass'n*, No. 22 Civ. 6348 (AKH), 2022 U.S. Dist. LEXIS 209067, at
    *2, 12 (S.D.N.Y. Nov. 17, 2022) (defendant is an "international newspaper and media company" in
20  the business of "news programs, television shows, documentaries, movies, and other audiovisual
    content"); *Lebakken v. WEBMD, LLC*, No. 1:22-CV-644-TWT, 2022 U.S. Dist. LEXIS 201010, at
21  *2, 8 n.2 (N.D. Ga. Nov. 4, 2022) (defendant is a provider of "online health information and medical
    news . . . through videos"); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-10810-RGS, 2022
22  U.S. Dist. LEXIS 168403, at *1–2 (D. Mass. Sep. 19, 2022) (defendant is a "multimedia
    organization" that "creates, hosts, and disseminates hundreds, if not thousands, of videos" on its
23  website); *Louth v. NFL Enter. LLC*, No. 1:21-cv-00405-MSM-PAS, 2022 U.S. Dist. LEXIS 163706,
    at *2 (D.R.I. Sep. 12, 2022) (defendant "owns and operates a mobile application . . . which
24  disseminates 'live local and primetime games, exciting videos and highlights, and replays of every
    game'"); *Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 U.S. Dist. LEXIS 237326, at *1–2
25  (N.D. Cal. Apr. 5, 2019) (defendant "operates the retail websites walmart.com and
    mobile.walmart.com . . . where it sells a variety of consumer goods, including DVDs, Blu-ray Discs,
26  video games, and other video media"); *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 U.S. Dist.
    LEXIS 112916, at *5 (N.D. Cal. Aug. 10, 2012) (defendant "provides video content," including
27  "news, entertainment, educational, and general interest programs").

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   (finding plausible allegations that Facebook's business is "significantly tailored to serve th[e]

2   purpose" of conveying video content to users, because Facebook "'regularly delivers' video content

3   to users and maintains a cache of videos and visual materials . . . for their delivery to users").

4      Plaintiffs have not and cannot allege that Smucker's "particular field of endeavor" is

5   delivering video content, nor that its products are substantially involved in the conveyance of video

6   content, much less tailored to that purpose. *Vizio*, 238 F. Supp. 3d at 1221.  Plaintiffs simply allege

7   that Smucker is a company selling coffee products referenced at the Folgers Coffee website.  These

8   allegations do not bring Smucker within the scope of the VPPA nor warrant expanding its scope.

9      **2.     Plaintiffs Concede That They Have Not Purchased Video Content And,**

10         **Accordingly, Are Not "Consumers" Under The VPPA**

11      Plaintiffs' Opposition confirms they are relying on the VPPA's "purchaser" transactional

12   relationship (and not the "renter" or "subscriber" transactional relationships) to establish that they are

13   "consumers" for purposes of the VPPA.  *See* Dkt. 29 at 15.  But Plaintiffs concede they did not

14   purchase video content from Smucker, as the VPPA requires, and instead rely on vaguely alleged

15   purchases of Folgers Coffee from unspecified sources in unspecified places at unspecified times.  *See*

16   *id.* at 16; Dkt. 16 at ¶¶ 36. 50.

17      These concessions are fatal to Plaintiffs' VPPA cause of action.  Plaintiffs cannot separate the

18   "purchaser" relationship from the type of purchase to which the VPPA's right of privacy attaches.

19   By its terms, the VPPA provides a right of privacy in a purchase of "prerecorded video cassette tapes

20   or similar audio visual materials." 18 U.S.C. § 2710(a)(4).  The VPPA unambiguously defines a

21   "consumer" as "a purchaser . . . of goods or services from . . . any person, engaged in the business, in

22   or affecting interstate or foreign commerce, of rental, sale, or delivery *of prerecorded video cassette*

23   *tapes or similar audio visual materials*."  18 U.S.C. § 2710(a)(1), (4) (emphasis supplied).

24      Congress enacted the VPPA to create a transaction-based right of privacy that would

25   "preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar

26   audio visual materials."  S. Rep. No. 100-599 at 1, 9 (1988).  That Senate Report further explained

27   that "simply because a business is engaged in the sale or rental of video materials or services does

28   not mean that all of its products or services are within the scope of the bill."  *Id.* at 12 (emphasis

13

supplied).  To get around this clearly stated purpose, Plaintiffs' quote a case that interprets a *different statute* and insert "VPPA" in brackets into that quote.  *See* Dkt. 29 at p. 16 (citing *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1078–79 (9th Cir. 2016) for the proposition that "[a]s a 'broad remedial statute,' the [VPPA] must be liberally construed in favor of the consumer in order to effectuate this goal of eliminating abuse").  *Hernandez* interpreted the Fair Debt Collection Practices Act (not the VPPA) and certainly did not expand its scope to entities other than debt collectors or to consumers other than debtors.  829 F.3d at 1079.  Rather, the "liberal construction" discussed in *Hernandez* pertained to whether a debt collector that buys debt from another debt collector is bound by the same obligations.  *Id.*  *Hernandez* is inapplicable and unhelpful here.

The VPPA does not create a right of privacy in the purchase of coffee because coffee is not a "good" or "service" within the meaning of the VPPA.  Adopting Plaintiffs' theory would confer VPPA standing on any purchaser of a consumer good, no matter how remote their purchase is from their video-viewing activity, which is not what Congress intended.  18 U.S.C. §§ 2710(a)(3), (b)(1).  Plaintiffs' cause of action should be dismissed for this reason alone.

> **3.    Plaintiffs Have Not Plausibly Alleged That Smucker Knowingly Disclosed "Specific Video Materials" that Plaintiffs "Requested or Obtained"**

Plaintiffs' Opposition offers no additional allegations to suggest that Smucker disclosed information that "identifies an individual as having watched certain videos." [11]  *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017); *accord In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (a VPPA plaintiff must allege defendant's transmission of "the consumer's identity; the video material's identity; and the connection between them").  Plaintiffs have not alleged that Smucker ever disclosed a "specific video" that Plaintiffs "requested" or "obtained." *See* Dkt. 16 at ¶ 21 ("Defendants [*sic*] disclose a webpage's Universal Resource Locator ('URL')"), ¶ 22 ("Microdata discloses the video's title and other descriptors").  The screenshots of Smucker's "disclosure" in the amended complaint merely identify a URL and title of a webpage that references

---

[11] Most of Section B-3 of Plaintiffs' Opposition responds to arguments Smucker did not make and appears to have been cut and pasted from Plaintiffs' counsel's other VPPA cases.  Smucker will limit its response to the arguments at issue in its motion.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

"a how to video" but do not identify Plaintiffs as having interacted with that video, nor any other video.  This deficiency is fatal to Plaintiffs' VPPA claim because "[s]imply sending a URL of a . . . webpage which may or may not include a video does not show that a person requested or obtained specific video materials or services."  *Martin v. Meredith Corp.*, No. 22cv4776 (DLC), 2023 U.S. Dist LEXIS 27539, at * 10–11 (S.D.N.Y. Feb. 17, 2023).   Moreover, contrary to Plaintiffs' suggestion, *Martin's* holding did not turn on whether the Facebook Pixel was customized.

Plaintiffs also fail to plead facts sufficient to infer that Smucker *knowingly* disclosed personally identifiable information, which requires "consciousness of transmitting the private information" and "not merely . . . transmitting the code" at issue.  *In re Hulu*, 86 F. Supp. 3d at 1095; *see also Bernadino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 U.S. Dist. LEXIS 129038, at *26–27 (S.D.N.Y. Aug. 11, 2017) (no VPPA liability in the absence of knowledge).   Plaintiffs allege only that their own browsers, not Smucker, sent information to Facebook as a result of a cookie placed by Facebook, and that Facebook had to link these disclosures to other information it already had.  *See* Dkt. 16 at ¶¶ 24–27, 32–34, 51.  Plaintiffs acknowledge that these cookies do not convey information that identifies Plaintiffs — they transmit only "encrypted Facebook IDs and browser identifier[s]" or merely identify a browser without a Facebook ID.  *See* Dkt. 16 at ¶¶ 26–27.  These assertions cannot support a VPPA claim, and Plaintiffs offer no indication of how they could further amend their complaint to cure the absence of any allegation that Smucker had access to or transmitted their identifying information to Facebook.

### III.   CONCLUSION

For the foregoing reasons, Smucker respectfully requests that the Court issue an order granting this motion without yet another opportunity to amend.

DATED: April 21, 2023

By: /s/ *Terence N. Hawley*
Terence N. Hawley
Benjamin Watson
Quynh La

Attorneys for Defendant